**D/FW COMMERCIAL ROOFING CO., INC., Appellant,**

**v.**

**Suresh MEHRA, Individually and d/b/a St. Tropez Ltd., St. Tropez, Ltd., Inc., St. Tropez Fashions, Inc., Stonebridge Investments, Inc., and Stonebridge Management Co., Appellees.**

**No. 05–91–01702–CV.**

Court of Appeals of Texas, Dallas.

April 6, 1993.

Kevin J. Cook, Dallas, for appellant.

James P. Reid, Ellen Ossenfort, Jeffrey S. Lynch, Dallas, for appellees.

Before THOMAS, MALONEY and KAPLAN[1], JJ.

## OPINION

THOMAS, Justice.

D/FW Commercial Roofing Co., Inc. appeals from an adverse judgment rendered in favor of Suresh Mehra, individually, and d/b/a St. Tropez, Ltd., St. Tropez, Ltd., Inc., and St. Tropez Fashions, Inc.[2] In two points of error, appellant complains that the trial court erred in (1) allowing recovery under the Deceptive Trade Practices–Consumer Protection Act[3] (DTPA or the Act) because appellees are not consumers and (2) awarding recovery for lost profits. In a single cross-point, appellees assert that the trial court erred in calculating the amount of their award of attorneys' fees. We overrule all points of error and the cross-point. Accordingly, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

Appellees are in the wholesale business of selling women's clothing and fabrics. At the time this controversy arose, their primary trade involved the importation of designer merchandise from India. During this period, most of appellees' inventory was stored in boxes in leased warehouse space. As retail outlets placed orders, the items were removed from the warehouse. Appellees leased warehouse space from Stonebridge.

The roof periodically leaked causing Stonebridge to incur expenses for repairs. In the summer of 1984, Stonebridge decided to replace a portion of the roof, which included a section that covered appellees' leased premises. Stonebridge hired appel-

lant to perform the work. No one notified appellees that a portion of the roof covering their inventory would be removed. After the roof was removed, a major rainstorm ensued. As a result, appellees' space was flooded. A substantial portion of appellees' inventory was damaged or destroyed.

Appellees sued Stonebridge and appellant under various theories, which included claims of negligence and DTPA violations. The jury found in favor of Stonebridge on all causes of action. As to the negligence claim, the jury found that both appellant and appellees were negligent. In apportioning the percentage of negligence, the jury found 80 percent attributable to appellant and 20 percent attributable to appellees. Under their negligence cause of action, appellees' recovery was approximately $530,000. The jury also found that appellant had violated a provision of the Act. Appellees' recovery for the DTPA violation was approximately $431,000. As a result of their recovery under the Act, appellees were also entitled to recover attorneys' fees of approximately $171,000. *See* § 17.-50(d). Appellees elected to recover under their DTPA claim.

## CONSUMER STATUS

In its first point of error, appellant asserts that the trial court erred in awarding any recovery under the Act because appellees were not consumers. As a basis for this conclusion, appellant argues that (a) there was no privity between the parties and (b) appellees were merely incidental beneficiaries under this transaction. We disagree.

### A. Basis for Appellees' Cause of Action

Appellees brought this action under section 17.50(a), which provides:

1. Justice Jeff Kaplan participated in this cause at the time it was submitted for decision. He did not, however, participate in the issuance of this opinion.

2. All appellate issues involving Stonebridge Investments, Inc. and Stonebridge Management

Co. were settled prior to the time this cause was submitted for decision.

3. See TEX.BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon 1987 & Supp.1993). All statutory references are to Vernon's Texas Business and Commerce Code, unless otherwise noted.

(a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter;

(2) breach of an express or implied warranty;

(3) any unconscionable action or course of action by any person; or

(4) the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code, as amended, or rules or regulations issued by the State Board of Insurance under Article 21.21, Texas Insurance Code, as amended.

§ 17.50(a). Appellees' recovery was on the basis that appellant breached its implied warranty to perform the roofing services in a good and workmanlike manner. § 17.-50(a)(2).

## B. Definition of Consumer

■ In order to maintain their DTPA action, appellees had to establish that they were consumers as that term is defined in section 17.45(4). Under the Act, a consumer is "an individual, partnership, corporation ... who seeks or acquires by purchase or lease, any goods or services...." § 17.-45(4). The Act does not require the same person to both acquire and purchase the goods. *See Kennedy v. Sale*, 689 S.W.2d 890 (Tex.1985) (employee who obtained insurance paid for by the employer was a consumer).

■ The general rule is that there is no "privity" requirement under the Act. The genesis of this rule was the Texas Supreme Court's holding in *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981). In *Cameron*, the purchasers of a home brought an action against the seller's real estate agent based on misrepresentations concerning the square footage of the home. The court refused to impose any type of

"privity requirement" into the definition of consumer, stating:

We find no indication in the definition of consumer in Section 17.45(4), or any other provision of the Act, that the legislature intended to restrict [the Act's] application only to deceptive trade practices committed by persons who furnish goods or services on which the complaint is based. Nor do we find any indication to restrict its application by any other similar privity requirement.

*Cameron*, 618 S.W.2d at 540–41.

■ Following *Cameron*, the supreme court addressed the issue again under various factual situations and again stated that privity between a plaintiff and defendant is not a consideration in deciding a plaintiff's status as a consumer under the Act. *See Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983); *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168, 169 (Tex.1983); *Stagner v. Friendswood Dev. Co.*, 620 S.W.2d 103, 103 (Tex.1981) (per curiam). Thus, the rule appears to be that standing as a consumer is established not by a plaintiff's contractual relationship with the defendant but rather by the plaintiff's relationship to the transaction. *See Flenniken*, 661 S.W.2d at 707; *Cameron*, 618 S.W.2d at 539.

## C. Whom Appellees Could Sue

■ Section 17.45(4) describes the class of persons entitled to bring suit under section 17.50(a); it does not define the class of persons subject to liability. *Flenniken*, 661 S.W.2d at 706. The range of defendants who may be sued is limited by the exemptions provided in section 17.49.[4] As a practical matter, once a plaintiff has established that he or she is a consumer, the plaintiff may sue almost anyone. *See* RICHARD M. ALDERMAN, THE TEXAS DECEPTIVE TRADE PRACTICES ACT ch. 3 (1991); 2 J. HADLEY EDGAR, JR. & JAMES B. SALES, TEXAS TORTS AND REMEDIES § 43.03[1][b] (1992). A defendant becomes liable by engaging in prohibited conduct that adversely affects a consumer in the context of the transaction. *See Flenniken*, 661 S.W.2d at 707.

---

**4.** It is undisputed that appellant does not fall within the statutory exemptions.

### D. Appellant's Contentions

■ Appellant acknowledges that "there is a legion of cases indicating that privity is not required under the DTPA." However, appellant argues that the cases have no application in this instance. First, appellant points out that the violations in *Flenniken* and *Cameron* involved different subsections than are in issue in this case. *Flenniken,* 661 S.W.2d at 707 (privity not required when case involves unconscionable conduct within § 17.50(a)(3)); ·*Cameron,* 618 S.W.2d at 541 (rejecting privity requirement for recovery under § 17.-50(a)(1)). Appellant asserts that the subsequent cases have merely followed *Flenniken* and *Cameron* without actually analyzing or focusing upon the particular language of the applicable subsection.

Appellant maintains that there is a privity requirement under section 17.50(a)(2) because its language is fundamentally different from the other subsections. The thrust of appellant's argument is that the exclusion of the words "any person" from the breach of warranty provision, while including the phrase in the other three subsections, demonstrates the legislature's intent that the DTPA remedies for breach of warranty are limited to those persons in privity with the plaintiff. We disagree with appellant's restricted approach.

In examining the language of *Cameron* and *Flenniken,* we conclude that there is nothing to indicate that their holdings should be limited to the particular subsections in dispute. On the contrary, the court in *Cameron* did not focus so much upon the language of the subsection, but rather it examined the interaction of the provisions of the entire Act. *Cameron,* 618 S.W.2d at 540. In attempting to ascertain the legislature's intent, the *Cameron* court stated that "we must look at the Act as a whole, and not its isolated provisions, keeping in mind 'the old law, the evil and the remedy.'" *Cameron,* 618 S.W.2d at 540 (quoting *Woods v. Littleton,* 554 S.W.2d 662, 665 (Tex.1977)).

We also note that the issue of privity relative to section 17.50(a)(2) has been addressed in a few appellate decisions and the rulings are adverse to appellant's argument.[5] *See Gupta,* 646 S.W.2d at 169 (privity between second homeowner and builder not a prerequisite for recovery for breach of implied warranties); *National Bugmobiles, Inc. v. Jobi Props.,* 773 S.W.2d 616, 621–22 (Tex.App.—Corpus Christi 1989, writ denied) (subsequent purchaser of real estate was consumer in action against exterminator for breach of express warranty); *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 148 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) (nonowner driver of truck that was sought for purposes of hauling materials was consumer under the Act); *Waters v. Hollie,* 642 S.W.2d 90, 92 (Tex.App.—Fort Worth 1982, no writ) (motorist whose vehicle was involuntarily towed and stored was consumer for purposes of bringing an action for breach of implied warranty).

### E. Conclusion

■ The legislature directed that the Act shall be liberally construed and applied to promote the underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection. § 17.44; *Cameron,* 618 S.W.2d at 540. We do not see any indication in the Act that the legislature intended to restrict the application of section 17.50(a)(2) by a privity requirement. We note that the legislature has had numerous opportunities to amend the Act and, in fact, even has changed the definition of consumer a number of times. Importantly, there has never been the inclusion of a privity requirement.

Appellant's services, which included an implied warranty that the roof repairs would be performed in a good and workmanlike manner, were purchased by Stone-

---

**5.** We also reject appellant's contentions that the holdings of these cases are limited to or depen-

dent upon some form of privity.

bridge. By virtue of their lease with Stonebridge, appellees acquired the benefit of appellant's services. It is not necessary that the consumer who "acquires" the services be the one who sought the services. *See Allied Towing v. Mitchell*, 833 S.W.2d 577, 581–82 (Tex.App.—Dallas 1992, no writ) (involuntary acquisition of goods or services is enough to make party a consumer under DTPA); *Nelson v. Schanzer*, 788 S.W.2d 81, 86–87 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (an involuntary bailor is a consumer under the Act).

Utilizing the same rationale as employed by the *Gupta* court, appellant is no more able to justify its improper work to appellees than it was to Stonebridge. *See Gupta*, 646 S.W.2d at 169. Therefore, we conclude that the trial court did not err in awarding recovery under the DTPA. We overrule the first point of error.

## APPELLEES' LOST PROFITS

In its second point of error, appellant asserts that the trial court erred in awarding damages for lost profits because there is factually insufficient evidence to support the jury's finding on this issue. As a part of this argument, appellant also contends that allowing the award for lost profits results in a double recovery for appellees.

### A. Standard of Review

In reviewing a factual-sufficiency point, we consider all of the evidence, including any evidence contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). This Court must consider, weigh, and compare all of the evidence in the record pertinent to the issue under consideration. *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex.1989) (per curiam); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). A finding can be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

In making its findings, the jury weighs the evidence, assesses the credibility of witnesses, and resolves conflicts and inconsistencies. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). The jurors are the judges of the facts proved and of the reasonable inferences to be drawn therefrom. *Lockley v. Page*, 142 Tex. 594, 598, 180 S.W.2d 616, 618 (1944). We are mindful that this Court is not a fact finder, and we cannot substitute our judgment for that of the jury, even if a different finding could be reached on the evidence. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

### B. Law Relative to Lost Profits

In order to recover lost profits, a party must produce sufficient evidence to enable the fact finder to determine the net amount of the loss with reasonable certainty. *See Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 496 (Tex.App.— Houston [1st Dist.] 1992, writ denied). The evidence relative to the profits must not be uncertain or speculative. *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 426, 115 S.W.2d 1097, 1098 (1938). However, it is not necessary that the lost profits be subject to exact calculation. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983).

A party must show either a history of profitability or the actual existence of future contracts from which lost profits can be calculated with reasonable certainty. *Allied Bank W. Loop v. C.B.D. & Assocs.*, 728 S.W.2d 49, 54–55 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Southwest Battery*, 131 Tex. at 426, 115 S.W.2d at 1098–99. Texas cases permit recovery for lost profits in reliance upon routinely kept business records so long as the evaluation of the business's decreased profitability is based upon objective facts, figures, and data. *See Southwestern Bell Media*, 825 S.W.2d at 497; *Allied Bank*, 728 S.W.2d at 55; *Automark v. Discount Trophies*, 681 S.W.2d 828, 830 (Tex.App.—Dallas 1984, no writ).

## C. Application of the Law to the Evidence

■ As a result of the water damage, appellees asserted that there was direct destruction to some 35,000 pieces of inventory and indirect damage of another 19,000 pieces because they became odd-lots.[6] The trial court appointed Doug Walters, a CPA, to serve as an auditor in this matter. Walters's job was to verify the inventory and establish a fair market value of the damaged goods. In addition, Walters was to verify or establish the amount of out-of-pocket expenses, any loss of profits, and loss of goodwill.

In making this argument, appellant primarily relies upon Walters's conclusion that appellees suffered no lost profits as a result of the flood. Walters stated that his decision on this issue was based upon the following facts: (1) the 1982 and 1983 tax returns which reflected profits did not appear to have been filed; (2) in his opinion, certain journal entries distorted the profits and proper journal entries would have demonstrated losses for the two years prior to this incident; (3) based upon appellees' history of a decline in sales, they were not going to generate a profit during 1984 and the years thereafter; and (4) appellees were losing 75 percent of their customers each year. Appellant acknowledges that appellees presented favorable testimony on the issue of lost profits. However, appellant asserts that the objective data was insufficient to support the jury's finding. In addition, it is further argued that the testimony of Suresh Mehra constituted speculative, conclusory statements of an interested party which will not sustain the award.

In connection with the issue of lost profits, the following exhibits were admitted: (1) Walters's extensive report; (2) appellees' financial records for the years 1982 through 1988, which included balance sheets, income statements, and tax returns; (3) an exhibit that showed the actual customer orders that had been booked for the year 1984 and the actual amounts that were shipped; (4) lists of the customers that stopped ordering from appellees after the flood; (5) logbooks for the years 1982 through 1988, which reflected all merchandise ordered from and shipped by appellees, as well as the price that the retail customer paid for the items; and (6) the U.S. Customs's documents that showed appellees' costs for the goods that were being sold. In addition, the jury heard testimony concerning approximately $504,000 worth of products that were ordered in 1984 but could not be shipped because the merchandise was damaged in the flood. Finally, Mehra provided testimony concerning the appellees' financial history and the average percentage of net income that was received each year from the gross profits. We conclude that there was sufficient objective data from which the jury could determine appellees' lost profits with reasonable certainty and exactness. *See Southwestern Bell Media,* 825 S.W.2d at 498.

Admittedly, appellees' financial condition both before and after the flood was a hotly contested issue during the trial. The jury was presented with vastly conflicting evidence. Depending upon which evidence the jury chose to believe, there would have been different answers. Again, however, this Court is not a fact finder, and we cannot substitute our judgment for that of the jury, even if a different finding could be reached on the evidence. *See Clancy,* 705 S.W.2d at 826. Further, we cannot say that the jury's finding relative to lost profits is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

## D. Double Recovery

Appellant also argues that the trial court erred in awarding damages for lost profits because this represents a double recovery for appellees. We hold that appellant has not properly preserved this complaint for appellate review.

---

**6.** Odd-lots are items of inventory that could not be sold because they were originally parts of coordinated sets or color groups. Apparently, there was no market for individual pieces of a coordinated set.

First, we note that appellant cites no authority to support this argument. Rule 74(f) of the Texas Rules of Appellate Procedure requires that a party include a discussion of the facts and the authorities relied upon to support the issues raised on appeal. *See* TEX.R.APP.P. 74(f). Failure to cite to any authority in support of a point of error constitutes a waiver of the point. *See Murrco Agency, Inc. v. Ryan,* 800 S.W.2d 600, 607 (Tex.App.—Dallas 1990, no writ); *J.B. Custom Design & Bldg. v. Clawson,* 794 S.W.2d 38, 41 (Tex.App.—Houston [1st Dist.] 1990, no writ); *see also Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 810 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dismissed,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

Second, appellant raises double recovery for the first time on appeal. In order to preserve appellate complaints, rule 52(a) of the Texas Rules of Appellate Procedure requires that "a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make, if the specific grounds were not apparent from the context." TEX.R.APP.P. 52(a). Appellant did not complain of the possibility of a double recovery either at trial by objecting to the charge or in its motion for new trial.

At trial, appellant's counsel objected to the charge relative to lost profits when he stated:

> [Appellant] objects to Question No. 3[7] in the [e]lement (c) submission for lost profits on the grounds that there are—is insufficient evidence for the [j]ury to form a reasonable basis for arriving at the damages figure, and therefore, leaves the arrival at a damage figure solely through speculation of the jury.

The trial court overruled the objection. The record demonstrates that appellant did not at any time complain that the charge as submitted would allow for a double recovery.

Appellant filed a motion for new trial. However, again, appellant did not make any complaint concerning appellees' possible double recovery. In fact, the only reference to damages are the assertions:

> There was insufficient evidence to support the jury's finding of damages in excess of the $154,481.00 found by the [c]ourt's independent auditor, Douglas M. Walters.

> In the alternative, [appellant] moves this [c]ourt to enter an Order of Remittitur by [appellees] of all portions of the [j]udgment rendered herein on July 29, 1991, except for the sum of $154,481.00 in damages as found by the [c]ourt's independent auditor, Douglas M. Walters, in that there was insufficient evidence to support the jury's finding.

Clearly, appellant was not complaining that appellees were receiving a double recovery by the award of both market value and lost profits. Instead, appellant was complaining that the evidence was factually insufficient to support the various elements of damages awarded by the jury.[8]

The requirements of motions for new trial are governed by the Texas Rules of Civil Procedure. Rule 321 requires that each point relied upon in a motion for new trial shall be designated in such a way that the complaint can be clearly identified and understood by the trial court. *See* TEX. R.CIV.P. 321. In addition, rule 322 provides that grounds of objections couched in general terms shall not be considered by the court. *See* TEX.R.CIV.P. 322. The purpose of a motion for new trial is to provide an opportunity for the trial court to cure any errors by granting a new trial. Therefore, the allegations in a motion for new trial must be sufficiently specific to enable trial court to clearly understand what is being alleged as error. *See Townsend v.*

---

7. We note that question 3 relates to the damages in connection with appellees' negligence claims. We do not find a remotely similar objection to question 13 which was the damages question relative to the DTPA action.

8. The elements of damages set out in the court's charge were for the market value of the damaged items, costs to restore the premises, lost profits, and loss of goodwill.

*Collard,* 575 S.W.2d 422, 423–24 (Tex.Civ. App.—Fort Worth 1978, no writ).

We hold that appellant's complaints in the motion for new trial did not alert the trial court that it was complaining about the possibility of a double recovery. Thus, the trial court could not have been expected to address this issue. A trial court should not have to speculate as to the nature of the alleged errors. *Townsend,* 575 S.W.2d at 424. We hold that this complaint cannot be raised for the first time on appeal.

We overrule appellant's second point of error.

### CROSS–POINT OF ERROR AMOUNT OF APPELLEES' ATTORNEYS' FEES

In a single cross-point, appellees assert that the trial court erred in calculating the amount of their attorneys' fee award. In question 16, the jury determined that a reasonable fee for the services of appellees' attorneys was 40 percent of the recovery.[9] Appellees contend that the trial court erred in limiting the fees to a percentage of their *actual damages,* rather than the *total recovery* which included prejudgment interest. We hold that appellees have waived any complaint on this issue.

Appellees filed a motion for judgment. As a part of that motion, appellees requested that a judgment be entered based upon the jury's verdict and that attorneys' fees of $171,218.80 be awarded, a sum equal to 40 percent of appellees' *actual* damage award. The judgment included the exact sum requested by appellees.

■ A party who induces the court to render a certain judgment cannot later complain of that judgment. *See Travenol Lab., Inc. v. Bandy Lab., Inc.,* 608 S.W.2d 308, 314 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.); *Butler v. Henry,* 589 S.W.2d 190, 192 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). Further, as a general rule, an appellate court will not consider cross-points unless the appellee has in some man-

ner expressed dissatisfaction with the judgment in the trial court. TEX.R.APP.P. 52(a); *see Trevino v. Espinosa,* 718 S.W.2d 848, 853 (Tex.App.—Corpus Christi 1986, no writ). Thus, we conclude that we need not consider appellees' cross-point.

We affirm the trial court's judgment.

---

**9.** In question 17, the jury also found that a reasonable fee for appellees' attorneys stated in dollars and cents was $117,613.