NUMBER 13-02-657-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

ROGER GERDES, JR. AND
CAROLYN GERDES,                                                          Appellants,

v.

JOHN KENNAMER AND 
MORA KENNAMER,                                                                    Appellees.
                                                                                                                                      

On appeal from the 23rd District Court of Matagorda County, Texas.
                                                                                                                      

DISSENTING OPINION

Before Justices Hinojosa, Yañez, and Castillo
Dissenting Opinion by Justice Yañez
 
          I disagree with the majority’s conclusion that appellants waived their second and
fourth issues, in which they challenge, respectively, the legal and factual sufficiency of the
evidence supporting the jury’s findings that: (1) breach of the relationship of trust and
confidence between Kennamer and Roger Gerdes (“Gerdes”) caused Kennamer’s
damages (issue two); and (2) Gerdes committed fraud against Kennamer (first part of issue
four). I would hold that: (1) appellants preserved their legal and factual sufficiency
challenges to these issues; (2) the evidence is legally and factually insufficient to support
the jury’s award of $1,000,000.00 in damages because Kennamer failed to establish
ownership of the property or assets upon which the award was based; (3) the evidence is
legally and factually insufficient to support the jury’s finding that Gerdes committed fraud
against Kennamer; and (4) the evidence is legally and factually insufficient to support the
jury’s award of $1,000,000.00 in damages for conversion because Kennamer failed to
establish ownership of the property or assets upon which the award was based. 
Accordingly, I would reverse the trial court’s judgment and render judgment that appellees
take nothing. 
Designation of Opinion
          Texas Rule of Appellate Procedure 47.4 provides as follows:
If the issues are settled, the court should write a brief memorandum opinion
no longer than necessary to advise the parties of the court’s decision and the
basic reasons for it. An opinion may not be designated a memorandum
opinion if the author of a concurrence or dissent opposes that designation. 
An opinion must be designated a memorandum opinion unless it does any
of the following:
 
(a) establishes a new rule of law, alters or modifies an existing rule, or
applies an existing rule to a novel fact situation likely to recur in future cases;
 
(b) involves issues of constitutional law or other legal issues important to the
jurisprudence of Texas; 
 
(c) criticizes existing law; or 
 
(d) resolves an apparent conflict of authority.
 
Tex. R. App. P. 47.4. 
 
          Justice Castillo has recommended that the majority opinion be designated
a “memorandum opinion.” I disagree that the majority opinion should be designated
a “memorandum opinion” because the issues in this case are not settled. See id. 
Further, as author of this dissenting opinion, I oppose the designation of the majority
opinion as a “memorandum opinion.” See id. Accordingly, the majority opinion
must be designated as an “opinion.” See id. 
Preservation of Error 
          The majority holds that appellants waived their second issue, in which they
challenge the legal and factual sufficiency of the evidence supporting the jury’s
finding of damages caused by Kennamer’s breach of his informal fiduciary
relationship with Gerdes. In their motion for partial judgment notwithstanding the
verdict, appellants asserted that “there was no/and or insufficient evidence of fraud,
conversion, and/or breach of fiduciary duty.” Similarly, in their motion for new trial,
appellants complained that “[t]here was no and/or insufficient evidence of fraud
and/or breach of fiduciary duty.” At trial, appellants complained that “there is
insufficient evidence of any fair market value.” In both their motion for partial
judgment notwithstanding the verdict and motion for new trial, appellants
complained that “[a]s [Kennamer], as a matter of law, never owned the property
involved herein as a matter of Mexican law, there was no damage due to any
alleged breach of Movant Roger Gerdes, Jr.’s fiduciary damage [sic], and therefore
Movants are entitled to a take-nothing judgment thereon.” The majority holds that
appellants’ complaints were “not specific enough” to preserve their challenges to the
evidence supporting the jury’s findings that Gerdes breached his fiduciary duty to
Kennamer, causing Kennamer to suffer $1,000,000.00 in damages. I disagree.
          “The purpose of a motion for new trial is to provide an opportunity for the trial
court to cure any errors by granting a new trial.” D/FW Commercial Roofing Co.,
Inc. v. Mehra, 854 S.W.2d 182, 189 (Tex. App.–Dallas 1993, no writ). “Therefore,
the allegations in a motion for new trial must be sufficiently specific to enable the
trial court to clearly understand what is being alleged as error.” Id. I would hold that
appellants’ complaints were sufficiently specific to enable the trial court to
understand that appellants were challenging the sufficiency of the evidence
supporting Gerdes’s breach of his fiduciary duty and the sufficiency of the evidence
supporting Kennamer’s damages because Kennamer failed to prove that he owned
the property on which the damages were based. 
          In the first part of issue four, appellants challenge the legal and factual
sufficiency of the evidence supporting the jury’s finding that Gerdes committed fraud
against Kennamer. The majority holds appellants waived their challenge to the
sufficiency of the evidence supporting the finding of fraud. As noted above,
appellants complained in both their motion for partial judgment notwithstanding the
verdict and their motion for new trial that “there was no/and or insufficient evidence
of fraud.” I would hold that appellants sufficiently preserved their challenge to the
sufficiency of the evidence supporting the jury’s finding of fraud. 
Damages 
          In their second issue, appellants challenge the legal and factual sufficiency
of the evidence supporting the jury’s finding of damages caused by Gerdes’s breach
of his fiduciary duty to Kennamer. 
          In assessing Kennamer’s damages resulting from Gerdes’s breach of his
fiduciary duty, the jury was instructed to consider the fair market value of the assets
taken from Kennamer by Gerdes. Thus, Kennamer was required to establish: (1)
ownership of assets that Gerdes took from him; and (2) the fair market value of
such assets. 
          When we review a "no evidence" or legal sufficiency of the evidence issue,
we must consider all of the record evidence in a light most favorable to the party in
whose favor the verdict has been rendered, and indulge in that party's favor every
reasonable inference deducible from the evidence. Formosa Plastics v. Presidio
Eng'rs, 960 S.W.2d 41, 48 (Tex. 1998); Adams v. H & H Meat Prod., Inc., 41
S.W.3d 762, 770 (Tex. App.–Corpus Christi 2001, no pet.). When both legal and
factual sufficiency issues are raised, we must first review the legal sufficiency to
determine if there is any evidence of probative value to support the judge's findings. 
Adams, 41 S.W.3d at 770 (citing Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400,
401 (Tex. 1981) (per curiam)). The findings of fact must be upheld if there is more
than a scintilla of evidence in support thereof. Id. There is more than a scintilla
when the evidence creates more than a mere surmise or suspicion of its existence. 
Id.
          If the findings are supported by legally sufficient evidence, we must then
review the factual sufficiency of the evidence. Id. When we review an "insufficient
evidence" or factual sufficiency of the evidence issue, we consider, weigh and
examine all of the evidence which supports or undermines the finding. Id. We set
aside the verdict only if it is so against the great weight and preponderance of the
evidence as to be manifestly unjust. Id. (citing Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986)). Because the trier of fact is the sole judge of the credibility
of the witnesses and the weight to be given their testimony, we may not substitute
our judgment for that of the fact finder's conclusions. Id.
Kennamer’s Testimony
          Kennamer testified that he paid $543,000 to purchase the hunting lodge
operation in Mexico, including the assets, name, and goodwill of the company. He
and his wife were the sole owners of the Texas corporation set up to run the
business; Gerdes was the owner of the Mexican corporation set up to run the
business. Kennamer later agreed to purchase the land surrounding the lodge
(approximately 8,000 acres) from the Montemayor family. He made a down
payment of $250,000.00. Because title to the property was restricted to Mexican
citizens, the land was divided into four parcels as follows: one parcel (with the
lodge) was placed in the name of Gerdes’s son, Roger Gerdes III (“Rusty”); a
second parcel was placed in the name of Cesar de la Garza, a Mexican attorney
who represented Kennamer and Gerdes in the transaction; the third and fourth
parcels were in the names of Maria Avalos, Gerdes’s maid, and her husband, Cesar
Avalos. Gerdes provided Kennamer with powers of attorney executed by each of
the title holders. In 1993, Rusty revoked the power of attorney in Kennamer’s favor
and later executed a second power of attorney in favor of his father. Mr.
Montemayor filed a criminal suit against Kennamer, Gerdes, and the other title
holders. 
          Sometime after Montemayor filed the lawsuit, Kennamer stopped making
payments on the property. Kennamer concedes he does not own the two Avalos
parcels because those parcels are encumbered by debt. Kennamer claims
ownership of the other two parcels (in the names of Rusty and de la Garza) “free
and clear.” Kennamer’s damages are based on “the improvements and the land
and the business and the assets of the business that are free and clear and
unencumbered;” the unencumbered property consists of approximately 900 acres. 
Gage, a company that expressed interest in purchasing the lodge, offered a million
and a half dollars for the lodge and the twenty acres it sits on. Kennamer valued
the remaining 880 acres at $1500 per acre. He estimated the value of the lodge
business (apart from the buildings and land) at $3 million, based on a formula of ten
times the annual gross income of the business, which he estimated at $300,000.00. 
Kennamer requested damages of $2.7 million for the lodge, improvements, and
land; he requested an additional $2 million for the “goodwill” of the business. 
          On cross-examination, Kennamer testified that after he filed his lawsuit, he
learned that under Mexican law, the person whose name appears on a deed is the
actual owner. Kennamer admitted he received a memorandum from Pat Kelly, an
attorney who traveled to Mexico to investigate the issue of who held title to the
property. The memorandum stated that the record owners of the property held title
under Mexican law. Kennamer also conceded that the powers of attorney executed
by de la Garza and Rusty are now invalid and ineffectual under Mexican law,
although he contends the documents were valid at the time they were executed. 
He conceded that the power of attorney executed by Rusty is dated September 24,
1991, but was not notarized until January 22, 1992.
          Kennamer testified that he made numerous attempts to contact Rusty
regarding the status of title to the property. When Rusty failed to return his calls,
Kennamer left a message on his answering machine. A transcript of the message
was admitted at trial:
Ummm, Rusty, it’s John Kennamer. Uhhh, it’s about 9:15 my time. Uhhh,
I really would like to talk to you. Uhhh, I’ve got a big meeting tomorrow with
a bunch of lawyers in Harlingen and uhhh, I’d like to keep you out of this
meeting if possible but uhhh, if I can’t talk to you I can’t help you. Uhhh, so
it might be worth a couple of hundred thousand to you if you were to pick up
the telephone and call me. And uhhhh, I can kinda fill you in on what’s fixin’
to come down. Uhhh, I know you’ve got a big investment in your career, you
and your wife and uhhh if this thing is not settled pretty quick, then uhh, all
of this lawsuit and everything could have a very negative effect on your
licensing,


 so give me a call and let’s, let’s you and I work this thing out to
your benefit and both of us can go on down the road and be happy. So give
me a call, it’s area code [phone number]. I’ll be up late this evening and I’ll
be leaving early tomorrow morning for The Valley, so uhhh, please give me
a call regardless what time you get in and uhhh, that way I can do you the
best service possible. I’ll be waiting on your call uh Rusty. I’ll talk to you
later. Thank you.
 
At trial, Kennamer was questioned about the message:
Q [Gerdes’s counsel]: Okay. So, what you’re doing is you’re threatening
him–
 
A [Kennamer]: No, I’m not.
 
Q: You’re threatening him– 
 
A: I’m making him aware of the facts.
 
Q: You’re threatening him that if he doesn’t call you back– 
 
A: He’s going to be sued.
 
Q: – you’re going to sue him?
 
A: That’s right. That’s not a threat. That was a promise.
 
Q: And you carried through with your promise?
 
A: I did. 
 
. . . .
 
Q: But you sued him anyway and left him in the lawsuit until Monday.
 
A: Until Friday.
 
          Kennamer admitted that he had agreed to release Rusty from the lawsuit in
exchange for Rusty’s agreement to voluntarily appear as a witness. In addition, the
following exchange occurred:
Q [Gerdes’s counsel]: And that also means that– I’m sorry. One of the other
conditions [for letting Rusty out of the lawsuit] was that he is supposed to
give to you whatever interest he has in the land that’s down in Mexico, true?
 
A [Kennamer]: Not to give me anything. 
 
Q: You’re not going to buy it from him?
 
A: He doesn’t own it.
 
Q: You’re not going buy—
 
A: He testified he did own it. He was holding it as a titleholder, a nominal
titleholder.
 
Q: Did the word “give” cause a problem? That he has to transfer any interest
he has– 
 
A: He agreed to sign whatever paperwork was necessary once the lawsuit
was determined. (emphasis added).
 
          Kennamer agreed to purchase the 8,000 acres of property from the Montemayors
for a purchase price of $1,038,000.00, but admitted that he stopped making payments after
paying only $340,000.00. He also admitted that since the time of the original purchase,
there have been no separate agreements to carve out any smaller portion of the property. 
Thus, although Kennamer claims that he “bought the land,” he admits that he did not finish
paying for “part” of the land. 
          Viewing the evidence in the light most favorable to Kennamer, I would hold that the
evidence is legally insufficient to support the finding that Kennamer established ownership
of any assets in Mexico. Thus, the evidence is legally insufficient to support the jury’s
finding that the fair market value of assets taken from Kennamer by Gerdes is
$1,000,000.00. 
          To recover for a claim of breach of a fiduciary relationship, a plaintiff must establish
(1) the existence of a fiduciary relationship; (2) breach of the duty; (3) causation; and (4)
damages. Parks-Davis Auctioneers, Inc. v. Verna Drilling Co., 589 S.W.2d 168, 169 (Tex.
App.–El Paso 1979, writ dism'd). Because Kennamer failed to establish the element of
damages, I would hold that the evidence is legally and factually insufficient to support the
jury’s finding that breach of the alleged informal fiduciary relationship between Kennamer
and Gerdes caused Kennamer’s damages. Accordingly, I would sustain appellants’
second issue. 
Fraud
          In the first part of their fourth issue, appellants contend the evidence is legally and
factually insufficient to support the jury’s findings that Gerdes committed fraud against
Kennamer.
          The elements of actionable fraud in Texas are: (1) that a material representation
was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false
or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that
he made it with the intention that it should be acted upon by the party; (5) that the party
acted in reliance upon it; and (6) that he thereby suffered injury. Ernst & Young, L.L.P. v.
Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001) (citing Trenholm v. Ratcliff, 646
S.W.2d 927, 930 (Tex. 1983)). 
          Here, the jury was instructed as follows:
Fraud occurs when– 
1. A party makes a material misrepresentation,
 
2. The misrepresentation is made with knowledge of its falsity or recklessly
without any knowledge of the truth and as positive assertion, 
 
3. The misrepresentation is made with the intention that it should be acted
on by the other party, and
 
4. The other party acts in reliance on the misrepresentation and thereby
suffers injury.
 
“Misrepresentation” means a false representation of fact.
          In support of their fraud claim, appellees cite Gerdes’s failure to disclose Rusty’s
1993 revocation of the power of attorney in Kennamer’s favor. They also cite various “other
material facts that Gerdes failed to disclose to Kennamer.” The supreme court has held that
“[a]s a general rule, a failure to disclose information does not constitute fraud unless there
is a duty to disclose the information.” Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001). 
“Thus, silence may be equivalent to a false representation only when the particular
circumstances impose a duty on the party to speak and he deliberately remains silent.” Id. 
Here, however, the jury’s answer to the fraud question was not conditioned on any finding
of a duty to disclose or of a confidential or fiduciary relationship between Gerdes and
Kennamer. The jury was not provided any instruction on failure to disclose when such a
duty exists. See State Bar of Texas, Pattern Jury Charge, PJC 105.4.
          The jury found that Kennamer discovered, or should have discovered, the alleged
fraud in January 2001; it awarded fraud damages in the amount of $35,000.00. In support
of the jury’s damage award, appellees cite plaintiff’s exhibit 53, which is a list of sums
purportedly invested by Kennamer in the lodge business. The list details investments by
year, beginning in 1986 and including 1990 through 2000. However, the last year detailing
an investment by Kennamer is 2000. Thus, there is no evidence supporting the jury’s
finding that Kennamer suffered $35,000.00 in damages in reliance on a misrepresentation
by Gerdes. I would sustain appellants’ fourth issue. 
Conversion
          To prove a cause of action for conversion, a plaintiff must show that the defendant
wrongfully exercised dominion and control over the plaintiff's property in denial of or
inconsistent with the plaintiff's rights in that property. Bandy v. First State Bank, Overton,
Tex., 835 S.W.2d 609, 622 (Tex. 1992); see also Whitaker v. Bank of El Paso, 850 S.W.2d
757, 760 (Tex. App.–El Paso 1993, no writ) (elaborating). Because Kennamer failed to
establish ownership of any assets in Mexico, he cannot recover for conversion and is not
entitled to any damages award on the basis of such ownership.
          I would reverse the trial court’s judgment and render judgment that appellees take
nothing. 
                                                                                                                                 
                                                                           LINDA REYNA YAÑEZ
                                                                           Justice
 
 
Dissenting opinion delivered and filed this the
6th day of December, 2004.