ACCEPTED
04-15-00097-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/30/2015 3:09:20 PM
KEITH HOTTLE
CLERK

NO. 04-15-00097-CV

IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
10/30/2015 3:09:20 PM
KEITH E. HOTTLE
Clerk

✳ ✳ ✳

BRIAN MCENERY,

*Appellant*

V.

CITY OF SAN ANTONIO AND CHIEF CHARLES N. HOOD,
*Appellees*

**BRIEF OF APPELLEES**

THE CITY OF SAN ANTONIO
Deborah Lynne Klein
State Bar No. 11556750
Office of the City Attorney
Litigation Division
111 Soledad Street, 10th Floor
San Antonio, Texas 78205
(210) 207-8784
(210) 207-4357 (telecopier)
deborah.klein@sanantonio.gov

FITZPATRICK & KOSANOVICH, P.C.
Mark Kosanovich
State Bar No. 00788754
P.O. Box 831121
San Antonio, Texas 78283-1121
(210) 207-7259
(210) 207-8997 (telecopier)
mark.kosanovich@sanantonio.gov

THE LAW OFFICE OF
JACQUELINE M. STROH, P.C.
Jacqueline M. Stroh
State Bar No. 00791747
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 477-7416
(210) 477-7466 (telecopier)
jackie@strohappellate.com

ATTORNEYS FOR APPELLEES
**APPELLEES CONDITIONALLY REQUEST ORAL ARGUMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................ ii

INDEX OF AUTHORITIES ........................................................................ vii

STATEMENT OF THE CASE ..................................................................... xiii

STATEMENT REGARDING ORAL ARGUMENT .............................................. xv

RESPONSIVE ISSUES PRESENTED .................................................................. xvi

**Issue No. 1:**

Whether Appellant Brian McEnery waived the issues he raises on appeal by failing to grieve them, by failing to frame them as questions for the arbitrator to decide, and by failing to plead them in the trial court below.

In his grievances, at the arbitration, and in his trial court pleadings, McEnery only ever complained about specific procedural flaws in the assessment center process as violative of chapter 143 of the Texas Local Government Code. Though he referenced a lack of "transparency" towards the end of the arbitration as some violation of chapter 143, he never grieved any such complaint. Moreover, he never raised any issue regarding "feedback" as violating the "Maintenance of Standards" portion of the CBA or any stand-alone complaint regarding his failure of the assessment center until he filed his post-evidentiary brief in the trial court below. ....................................... xvi

**Issue No. 2:**

Whether the trial court correctly rejected McEnery's challenges to the arbitrator's decision on the absence of feedback, his failure of the tactical exam portion of the assessment center, and the form of the arbitrator's decision.

McEnery never established that something as trivial as post-assessment feedback rose to the level of a "standard," "privilege," or "working condition"; never established that feedback had become a firmly entrenched past practice; and never demonstrated how feedback would have affected the assessment center results. As for any complaint based on chapter 143, McEnery points to no legislative requirement for feedback and ignores language in the CBA that expressly preempts chapter 143's application to the assessment center process. Regardless, a federal district court rejected similar complaints made by McEnery in 2011, precluding their relitigation by virtue of res judicata and/or collateral estoppel – a ground supporting the judgment, which McEnery failed to challenge on appeal and which requires affirmance. In the alternative, Appellees raise it as an alternative basis for affirmance.

As to McEnery's failure of the tactical exam, the arbitration record contains more than a scintilla of evidence in support through the assessors' grading sheets and notes, which expressed concerns and reservations regarding his performance. And the form of the arbitrator's decision complied in all respects with the CBA and addressed all issues raised by McEnery for him to resolve..........................xvi

## Issue No. 3:

Whether McEnery's appeal has been rendered moot.

In his grievance and at the arbitration, McEnery's only request for relief was an ability to retake the promotional exam and to be promoted to District Chief. Since the arbitration, McEnery has received all the relief he requested. He retook the examination for promotion to District Chief and has been promoted. ................................. xvii

## Issue No. 4

Whether McEnery's filed his notice of appeal untimely.

McEnery failed to file his notice of appeal within 30 days of the trial court's judgment, relying on his request for findings and conclusions and his motion for new trial to extend his filing deadline. However, the questions presented to the trial court were all matters of law –

iii

making findings and conclusions inappropriate and ineffective to extend appellate deadlines. Similarly, a motion for new trial does not operate to extend the time to appeal when the trial court is acting, not as a trial court, but as an appellate court in review of an arbitrator's determination of facts. .............................................................................. xvii

STATEMENT OF FACTS ......................................................................1

SUMMARY OF THE ARGUMENT ......................................................7

ARGUMENT AND AUTHORITIES ....................................................11

    I.     The Arbitrator's Decision Is Supported by Substantial Evidence, and the Arbitrator Did Not Act Capriciously ....................11

        A.     The Governing Standard of Review Permits the Court to Set Aside the Arbitrator's Decision Only if McEnery Produced a Firm Conviction in the Court's Mind that the Decision Lacks Any and All Support or that the Decision Resulted from Willful and Unreasoning Action ......................11

        B.     McEnery Only Ever Raised to the Arbitrator Whether Certain Procedural Elements of the Promotional Exam Violated Chapter 143 – Waiving Review of Any Other Issue ..................................................................................16

        C.     Regardless, the Denial of McEnery's Grievance Is Supported by the Record and the Law ......................................27

            1.     The Arbitrator's Decision Cannot Be Disturbed Based on a Lack of Feedback .........................................27

                a.     Article 9 of the CBA Does Not Require that the Assessors Have Given McEnery Feedback – and Certainly Not Anything More Than He Obtained Through Their Notes.................................................................27

iv

         b.     The Arbitrator Correctly Determined that Chapter 143 Does Not Invalidate the Assessment Center ................................................32

         c.     Not Only Does Any Challenge Based on Chapter 143 Lack Merit, It Is Barred by Res Judicata and/or Collateral Estoppel......................38

    2.     The Assessor's Notes, Coupled with the Grading Sheets Constitute More Than a Scintilla of Evidence Supporting McEnery's Failure of the Tactical Exam .................................................41

    3.     The Form of the Arbitrator's Decision Complied with the Parties' Collective Bargaining Agreement.......46

II.    McEnery's Appeal Is Now Moot:  Since the Arbitration, McEnery Has Taken and Passed the Exam for Promotion to District Chief ......................................................................48

III.   McEnery Filed His Notice of Appeal Beyond the Deadline for Doing So, and Neither His Request for Findings and Conclusions nor His Motion for New Trial Extended the Time to Appeal .......................................................................50

    A.    A Notice of Appeal Generally Falls Due 30 Days After the Judgment Is Signed ............................................50

    B.    A Request for Findings of Fact and Conclusions of Law Does Not Extend the Time to Appeal from a Trial Court's Review of an Arbitration Decision under a Substantial Evidence Standard..................................51

    C.    Similarly, a Motion for New Trial Cannot Extend the Time for Perfecting an Appeal When the Trial Court Acts in an Appellate Capacity .........................................53

PRAYER .........................................................................................56

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
     LIMITATION ...........................................................................................57

CERTIFICATE OF SERVICE .................................................................................57

# INDEX OF AUTHORITIES

**Page**

**C**ASES

*Aspri Investments, LLC v. Afeef*,
No. 04-10-00573-CV, 2011 WL 3849487
(Tex. App. – San Antonio, Aug. 31, 2011, pet. dism'd) (mem. op.)............. 12, 14

*Barr v. Resolution Trust Corp.*,
837 S.W.2d 627 (Tex. 1992) ...................................................................39

*Berteen v. Hamdan*,
No. 14-10-00247-CV, 2011 WL 3503322
(Tex. App. – Houston [14th Dist.], Aug. 11, 2011, no pet.) (mem. op.)..............15

*City of El Paso v. Public Utility Comm'n*,
883 S.W.2d 179 (Tex. 1994) ...................................................................13

*City of Elsa v. Gonzalez*,
325 S.W.3d 622 (Tex. 2010) ...................................................................49

*City of Laredo v. Mojica*,
399 S.W.3d 190 (Tex. App. – San Antonio 2012, pet. denied)...........................28

*City of San Antonio v. Cortes*,
___ S.W.3d ___, 2015 WL 1938695
(Tex. App. – San Antonio, Apr. 29, 2015, pet. filed)............................................41

*CVN Group, Inc. v. Delgado*,
95 S.W.3d 234 (Tex. 2002)................................................................................11

*D/FW Commercial Roofing Co., Inc. v. Mehra*,
854 S.W.2d 182 (Tex. App. – Dallas 1993, no writ)............................................53

*Eagle Properties, Ltd. v. Scharbauer*,
807 S.W.2d 714 (Tex. 1990) .........................................................................39

*Epps v.Fowler*,
351 S.W.3d 862 (Tex. 2011) .........................................................................13

*ERI Consulting Eng'rs, Inc. v. Swinnea*,
318 S.W.3d 867 (Tex. 2010) ................................................................. 37, 48

vii

*Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*,
  446 S.W.3d 58 (Tex. App. – Houston [1st Dist.] 2014, pet. filed) ......................14

*Gomez v. City of Brownsville*,
  976 S.W.2d 291 (Tex. App. – Corpus Christi 1998, pet. denied) ........................37

*Harlow Land Co., Ltd. v. City of Melissa*,
  314 S.W.3d 713 (Tex. App. – Dallas 2010, no pet.) ...........................................49

*Harrison v. City of San Antonio*,
  695 S.W.2d 271 (Tex. App. – San Antonio
  1985, no writ)........................ 4, 5, 6, 16, 17, 18, 21, 22, 32, 36, 37, 38, 39, 40, 41

*Heckman v. Williamson County*,
  369 S.W.3d 137 (Tex. 2012) ...............................................................................48

*Hill Int'l, Inc. v. Riverside General Hosp., Inc.*,
  No. 01-14-00038-CV, 2014 WL 2433131
  (Tex. App. – Houston [1st Dist.], May 29, 2014, no pet.) (mem. op.).................14

*In re Bush*,
  No. 12-12-00326-CV, 2014 WL 668199
  (Tex. App. – Tyler, Feb. 19, 2014, orig. proceeding) (mem. op.)........................49

*In re Edwards Aquifer Auth.*,
  217 S.W.3d 581 (Tex. App. – San Antonio 2006, orig. proceeding)............ 11, 51

*In re Kellogg Brown & Root, Inc.*,
  166 S.W.3d 732 (Tex. 2005) (orig. proceeding) .................................................48

*In the Interest of M.A.B.*,
  No. 01-15-00388-CV, 2015 WL 6081937
  (Tex. App. – Houston [1st Dist.], Oct. 15, 2015, no pet.) (mem. op.) .................15

*Jacobs v. Satterwhite*,
  65 S.W.3d 653 (Tex. 2001) (per curiam)............................................................25

*Jamison & Harris v. National Loan Investors*,
  939 S.W.2d 735 (Tex. App. – Houston [14th Dist.] 1997, writ denied) ..............13

*Leshin v. Oliva*,
  No. 04-14-00657-CV, 2015 WL 4554333
  (Tex. App. – San Antonio, Jul. 29, 2015, no pet.) (mem. op.) ...................... 11, 12

*Linwood v. NCNB Tex.*,
 885 S.W.2d 102 (Tex. 1994) ...................................................................52

*Madisonville Consol. Indep. Sch. Dist. v. Texas Employment Comm'n*,
 821 S.W.2d 310 (Tex. App. – Corpus Christi 1991, writ denied).......................52

*Mapco, Inc. v. Carter*,
 817 S.W.2d 686 (Tex. 1991) (per curiam) ..........................................................26

*McEnery v. City of San Antonio*,
 No. 5:10-cv-001150-FB, slip op. at 29 (W.D. Tex., Sep. 28, 2011) ............ 36, 40

*Mireles v. Texas Dep't of Pub. Safety*,
 9 S.W.3d 128 (Tex. 1999).....................................................................................12

*National Collegiate Athletic Ass'n v. Jones*,
 1 S.W.3d 83 (Tex. 1999).......................................................................................49

*Neira v. Scully*,
 No. 04-14-00687-CV, 2015 WL 4478009
 (Tex. App. – San Antonio, Jul. 22, 2015, no pet.) (mem. op.) ...................... 37, 48

*Omoruvi v. Grocers Supply Co.*,
 No. 14-09-00151-CV, 2010 WL 1992585
 (Tex. App. – Houston [14th Dist.], May 20, 2010, no pet.) (mem. op.) ....... 26, 50

*Orange Ass'n of Fire Fighters v. City of Orange*,
 No. 14-13-00061-CV, 2014 WL 891591
 (Tex. App. – Houston [14th Dist.], Mar. 6, 2014, no pet.) (mem. op.)................28

*Plaza at Turtle Creek Ltd. v. Henry Bldg., Inc.*,
 No. 08-00-00416-CV, 2002 WL 59603
 (Tex. App. – El Paso, Jan. 17, 2002, no pet.) (not designated for publication) ...26

*Port Arthur Police Ass'n v. City of Port Arthur*,
 No. 09-09-00242-CV, 2010 WL 2173874
 (Tex. App. – Beaumont, May 27, 2010, no pet.) (mem. op.) ..............................28

*Primo v. Great Am. Ins. Co.*,
 455 S.W.3d 714 (Tex. App. – Houston [14th Dist.] 2015, pet. filed).................52

*Public Utility Comm'n of Tex. v. Gulf States Utilities Co.*,
 809 S.W.2d 201 (Tex. 1991) ................................................................................45

*Railroad Comm'n of Tex. v. Torch Operating Co.*,
   912 S.W.2d 790 (Tex. 1995) .............................................................. 12, 13

*Rogers v. State Board of Public Accountancy*,
   310 S.W.3d 1 (Tex. App. – Austin 2008, no pet.)..................................55

*Spicer v. Texas Workforce Comm'n*,
   430 S.W.3d 526 (Tex. App. – Dallas 2014, no pet.) ..............................13

*Swain v. State*,
   319 S.W.3d 878 (Tex. App. – Fort Worth 2010, no pet.) (per curiam)......... 54, 55

*Texas Ass'n of Business v. Texas Air Control Bd.*,
   852 S.W.2d 440 (Tex. 1993) .................................................................49

*Texas Dep't of Pub. Safety v. Alford*,
   209 S.W.3d 101 (Tex. 2006) .................................................................51

*Texas Dep't of Pub. Safety v. Fecci*,
   989 S.W.2d 135 (Tex. App. – San Antonio 1999, pet. denied)...........................55

*Texas Dep't of Public Safety v. Petta*,
   44 S.W.3d 575 (Tex. 2001)................................................................ 38, 39

*Texas Dep't of Public Safety v. Shelberg*,
   No. 13-04-00100-CV, 2005 WL 1981488
   (Tex. App. – Corpus Christi, Aug. 18, 2005, no pet.) (mem. op.) .......................54

*Texas State Bd. of Dental Examiners v. Brown*,
   281 S.W.3d 692 (Tex. App. – Corpus Christi 2009, pet. denied) .......................52

*Travelers Ins. Co. v. Joachim*,
   315 S.W.3d 860 (Tex. 2010) .................................................................38

*Trulock v. City of Duncanville*,
   277 S.W.3d 920 (Tex. App. – Dallas 2009, no pet.) .............................15

*Valentino v. City of Houston*,
   674 S.W.2d 813 (Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.) .........52

*Verburgt v. Dorner*,
   959 S.W.2d 615 (Tex. 1997) .................................................................53

*Wise Elec. Coop., Inc. v. American Hat Co.*,
   ___ S.W.3d ___, 2015 WL 5460543
   (Tex. App. – Fort Worth, Sep. 17, 2015, no pet. h.)..............................16

*Xtria L.L.C. v. International Ins. Alliance, Inc.*,
   286 S.W.3d 583 (Tex. App. – Texarkana 2009, pet. denied)..............................14

## STATUTES

TEX. CIV. PRAC. & REM. CODE § 41.001(2) ..................................................15

TEX. LOC. GOV'T CODE chp. 143 ....................................................... passim

TEX. LOC. GOV'T CODE section 143.001 ....................................... 22, 23, 24

TEX. LOC. GOV'T CODE section 143.001(a) ...................................... 8, 9, 32, 33

TEX. LOC. GOV'T CODE § 143.032 ..................................... 19, 22, 24, 33, 35

TEX. LOC. GOV'T CODE § 143.033 ........................................... 19, 22, 24

TEX. LOC. GOV'T CODE § 143.033(a).............................................. 19, 33

TEX. LOC. GOV'T CODE § 143.034 ..................................... 19, 22, 24, 33

TEX. LOC. GOV'T CODE chp. 174 .................................................9, 32

TEX. LOC. GOV'T CODE § 174.006 ...................................................34

TEX. LOC. GOV'T CODE § 214.0012(f) .................................................54

## RULES

TEX. R. APP. P. 9.4(i)..................................................................57

TEX. R. APP. P. 26.1.....................................................................50

TEX. R. APP. P. 26.1(a) ..............................................................51

TEX. R. APP. P. 26.1(a)(1) ..........................................................51

TEX. R. APP. P. 26.1(a)(4) ..........................................................51

TEX. R. APP. P. 33.1(a)(1) ..........................................................14

TEX. R. APP. P. 38.1(i) ................................................................... 37, 48

TEX. R. APP. P. 4.1(a) .........................................................................50

TEX. R. CIV. P. 296 ............................................................................51

TEX. R. CIV. P. 301 ...........................................................................26

TEX. R. CIV. P. 320 ............................................................................54

TEX. R. CIV. P. 324(b) ........................................................................55

**STATEMENT OF THE CASE**

*Nature of the Case:* Brian McEnery filed suit to challenge an adverse arbitration decision, which rejected his attack on the exam used for promotion to the position of District Chief in the San Antonio Fire Department. (*1 CR 1-9, 34-45*) He sought review under the restrictive substantial-evidence and capriciousness standard contained in the parties' Collective Bargaining Agreement. (*5 RR 228 at Ps' X 3*)[1]

*Trial court:* Suit was filed in the 285th Judicial District Court, in which Judge Richard Price presides. Judge Cathy Stryker of the 224th Judicial District Court, Bexar County, Texas, however, signed the Final Judgment that is the subject of this appeal. (*3 CR 113*)

*Trial Court's Disposition:* The trial court signed a Final Judgment on November 25, 2014, in which it denied Plaintiff's request for relief, rendered judgment for the Defendants, and confirmed the arbitration award. (*3 CR 113*)

*Parties in the Court of Appeals:* Appellant Brian McEnery was the Plaintiff below. Appellees the City of San Antonio and Chief Charles N. Hood were the Defendants below.

*Requested Disposition from This Court:* Appellees, the City of San Antonio and Chief Charles N. Hood, request that the Court dismiss this appeal for lack of

---

[1] The clerk's record will be cited as "CR." Each reference to the clerk's record will be preceded by the appropriate volume number and will be followed by the appropriate page number as assigned by the Bexar County District Clerk. The reporter's record will be cited as "RR." Each reference to the reporter's record will be preceded by the appropriate volume number and will be followed by the page number assigned by the court reporter. With respect to Volume 5 of the Reporter's Record, which contains the exhibits, reference will be made to the page number of the pdf document, as well as to the specific exhibit in question. The notation "P's X" will refer to an exhibit introduced by Brian McEnery. The notation "Ds' X" will refer to an exhibit introduced by the Appellees, who were Defendants below.

jurisdiction; or, in the alternative, affirm the judgment of the trial court.  Appellees further request that the Court award them their costs on appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees, the City of San Antonio and Chief Charles N. Hood, respectfully request that oral argument be denied. Appellant Brian McEnery makes only a half-hearted, two-sentence plea for argument; and the appellate issues he raises can be resolved on the briefs. The facts are straightforward, and the governing standards of review are well-entrenched in Texas law. McEnery has waived for review all of the arguments he presents to the Court, and his appeal has been mooted by his promotion to District Chief following the arbitration decision he challenges. Regardless, his points lack all merit and at least some of them have already been rejected by a federal district judge in prior litigation – litigation that was also filed by McEnery in an effort to mandate his promotion following a 2009 exam. Because both the record and the law demonstrate that no reversible error exists, particularly given McEnery's waiver, oral argument would add nothing. However, if the Court decides to hear oral argument, Appellees would like to participate.

# RESPONSIVE ISSUES PRESENTED

## Issue No. 1:

Whether Appellant Brian McEnery waived the issues he raises on appeal by failing to grieve them, by failing to frame them as questions for the arbitrator to decide, and by failing to plead them in the trial court below.

In his grievances, at the arbitration, and in his trial court pleadings, McEnery only ever complained about specific procedural flaws in the assessment center process as violative of chapter 143 of the Texas Local Government Code. Though he referenced a lack of "transparency" towards the end of the arbitration as some violation of chapter 143, he never grieved any such complaint. Moreover, he never raised any issue regarding "feedback" as violating the "Maintenance of Standards" portion of the CBA or any stand-alone complaint regarding his failure of the assessment center until he filed his post-evidentiary brief in the trial court below.

## Issue No. 2:

Whether the trial court correctly rejected McEnery's challenges to the arbitrator's decision on the absence of feedback, his failure of the tactical exam portion of the assessment center, and the form of the arbitrator's decision.

McEnery never established that something as trivial as post-assessment feedback rose to the level of a "standard," "privilege," or "working condition"; never established that feedback had become a firmly entrenched past practice; and never demonstrated how feedback would have affected the assessment center results. As for any complaint based on chapter 143, McEnery points to no legislative requirement for feedback and ignores language in the CBA that expressly preempts chapter 143's application to the assessment center process. Regardless, a federal district court rejected similar complaints made by McEnery in 2011, precluding their relitigation by virtue of res judicata and/or collateral estoppel – a ground supporting the judgment, which McEnery failed to challenge on appeal and which requires affirmance. In the alternative, Appellees raise it as an alternative basis for affirmance.

As to McEnery's failure of the tactical exam, the arbitration record contains more than a scintilla of evidence in support through the assessors' grading sheets and notes, which expressed concerns and reservations regarding his performance. And

the form of the arbitrator's decision complied in all respects with the CBA and addressed all issues raised by McEnery for him to resolve.

**Issue No. 3:**

Whether McEnery's appeal has been rendered moot.

In his grievance and at the arbitration, McEnery's only request for relief was an ability to retake the promotional exam and to be promoted to District Chief. Since the arbitration, McEnery has received all the relief he requested. He retook the examination for promotion to District Chief and has been promoted.

**Issue No. 4**

Whether McEnery's filed his notice of appeal untimely.

McEnery failed to file his notice of appeal within 30 days of the trial court's judgment, relying on his request for findings and conclusions and his motion for new trial to extend his filing deadline. However, the questions presented to the trial court were all matters of law – making findings and conclusions inappropriate and ineffective to extend appellate deadlines. Similarly, a motion for new trial does not operate to extend the time to appeal when the trial court is acting, not as a trial court, but as an appellate court in review of an arbitrator's determination of facts.

**STATEMENT OF FACTS**

The City of San Antonio and the International Association of Fire Fighters, Local 624, agreed in 1981 to introduce an assessment center aspect to the examination for promotions to the position of Assistant Chief within the San Antonio Fire Department. (*5 RR 48, 130 at P's X 1*) In 1988, they agreed to use the same assessment center evaluation as part of the examination for promotion to the position of District Chief. (*5 RR 130 at P's X 1*) The applicable Collective Bargaining Agreement likewise contains a two-part examination for promotion to District Chief: a written test to be given in compliance with chapter 143 of the Texas Local Government Code; and an assessment center to be given in accordance with guidelines on which the City and the Union separately agree. (*5 RR 225-26 at P's X 3*) The decision by the City and the Union to incorporate an assessment center as part of these promotional exams is well-founded. Decades of research has shown that the assessment center is the best predictor of supervisory and managerial success and far superior to written tests, peer reviews, or performance evaluations. (*5 RR 96 at P's X 1*)

On February 10, 2009, Appellant Brian McEnery, who was then a Captain with the San Antonio Fire Department, took the written portion of the examination for promotion to District Chief. (*5 RR 70 at P's X 1; 5 RR 471at Ds' X 2*) On March 17-20, 2009, he then participated in the assessment center portion of the

1

exam, which consisted of an "in basket" exercise, an oral presentation, and an oral resume. (*5 RR 471-72 at Ds' X 2*) In light of McEnery's ranking following the exam, he was not promoted to District Chief. (*5 RR 70 at P's X 1; 5 RR 471-72 at Ds' X 2*) As a result, McEnery challenged the assessment center process through arbitration pursuant to the CBA; and the arbitration rejected that challenge. (*5 RR 70 at P's X 1; 5 RR 227 at P's X 3; 5 RR 461, 463 at Ds' X 1*) On February 18, 2010, McEnery then filed suit in federal district court to challenge the arbitrator's decision. (*5 RR 455-68 at Ds' X 1*)

While that suit was pending and in preparation for the 2010 promotional exam, the Union and the City established written guidelines for the next assessment center, as well as the assessors who would be participating. (*5 RR 49, 58 at P's X 1; 5 RR 405 at P's X 16*) They did so pursuant to express provisions of the CBA investing them with the exclusive authority to determine how the assessment center exam process will be conducted, nothwithstanding the requirements of chapter 143. (*5 RR 226, 227 at P's X 3*) Those guidelines set forth the exercises to be used for the assessment center, including the weighting of each exercise, and identified the assessors who would actually conduct the assessment center – all in compliance with sections 4(b)(3) and 5 of Article 32 of the CBA. (*5 RR 52 at P's X 1; 5 RR 226 at P's X 3*)

Specifically, the Union and the City agreed to weight the grading as follows: 40 percent in-basket; 40 percent tactical; and 20 percent oral examination. (*5 RR 53 at P's X 1; 5 RR 405 at P's X 16*) The in-basket exercise required the candidates to prioritize among a number of scenarios and then offer resolutions for each. (*5 RR 53 at P's X 1; 5 RR 381-92 at P's X 16*) As part of the tactical exercise, the candidate was presented with a fire-fighting emergency scenario, which the candidate was required to resolve. (*5 RR 54-55 at P's X 1; 5 RR 378-80 at P's X 16*) As part of the oral exercise, candidates were required to respond orally to questions posed by the assessors. (*5 RR 54 at P's X 1; 5 RR 377 at P's X 16*) Dr. Walter S. Booth, with whom the City had a contract, created the assessment center examination. (*5 RR 54, 95 at P's X 1; 5 RR 413-31 at P's X 17*)

McEnery again sat for the promotional exam to District Chief in 2010. (*5 RR 71 at P's X 1*) After the written examination, he proceeded to the assessment center portion, which was a three-day process held on May 12-14, 2010. (*5 RR 71, 91 at P's X 1*) On the first day, he was given an oral examination. (*5 RR 71 at P's X 1*) The second day consisted of a tactical exam. (*5 RR 72 at P's X 1*) The third day consisted of the in-basket exercise. (*5 RR 78 at P's X 1*) During the tactical exam, the assessors noted their concerns and reservations about McEnery's performance. (*5 RR 303-16 at P's X 10*) For example, one assessor noted that McEnery was "disorganized in presentation," while multiple assessors noted his

3

limited and lopsided eye contact. (*5 RR 124 at P's X 1; 5 RR 310, 314, 316 at P's X 10*) One of the assessors wrote that McEnery was "[u]nwilling to address fire problem because risk of the roof. Will let the people come out. Failed to address the fire. Don't want anyone to act upon the rescue." (*5 RR 124-25 at P's X 1; 5 RR 313 at P's X 10*) Another's notes also highlighted McEnery's failure to address containment and control of the fire. (*5 RR 316 at P's X 10*) Candidates are graded by the assessors on their responses and presentation during the assessment center portion of the exam. (*5 RR 97 at P's X 1*)

While McEnery passed the written exam and while he scored above minimally acceptable levels on the in basket exercise and oral exercises, he failed the tactical exam. (*5 RR 41, 73-74 at P's X 1; 5 RR 393-401 at P's X 16*) The assessors gave McEnery fours and fives on the tactical exam, where anything below seven is unsatisfactory. (*5 RR 55 at P's X 1; 5 RR 393-401 at P's X 16*) On May 19, 2010, McEnery learned that he failed. (*5 RR 80, 92 at P's X 1*) He followed with a handwritten grievance on May 20, 2010, referencing chapter 143 and alleging that the assessment center violated chapter 143 because it was an oral exam, because the candidates were not tested together, and because the candidates were not asked the same questions; and he also referenced *Harrison v. City of San Antonio*, 695 S.W.2d 271 (Tex. App. – San Antonio 1985, no writ). (*5 RR 245 at P's X 4*) He followed with a written letter that, too, referenced violations of

4

chapter 143 and *Harrison* based on the failure to administer and grade the assessment center in the presence of all candidates. (*5 RR 244 at P's X 4*)

McEnery began requesting documentation on May 24, 2010 in the form of assessment center test, grade sheets, correct answers,[2] source material for the questions, and the name of the publishing company that produced the source material. (*5 RR 92-93 at P's X 1; 5 RR 236-45 at P's X 4*)  He submitted a third grievance on May 28, 2010 that, again, focused on chapter 143. (*5 RR 235-42 at P's X 4*)  There, he reiterated that the entire exam should have been in writing, that he was not tested in the presence of other eligible candidates, and that he was given different questions from the other candidates, and that he was not permitted to be present during grading – and added that the questions were not taken from published source material. (*5 RR 235-36 at P's X 4*)  He claimed that these deviations violated chapter 143 and *Harrison*. (*5 RR 235-36 at P's X 4*)

The arbitration occurred on July 6 and 7, 2010. (*5 RR 9-145 at P's X 1*) There, too, McEnery repeatedly framed the issue in connection with procedural violations of chapter 143. (*5 RR 40-41, 72, 81, 140-41 at P's X 1*)  The arbitrator, LeRoy R. Bartman, issued his decision on August 2, 2010, determining that McEnery's grievance should be denied. (*5 RR 147-55 at P's X 2*)  McEnery filed

---

[2] As Dr. Booth explained, there is no such thing as a "correct" answer in the context of the assessment center. (*5 RR 98-99, 101, 103 at P's X 1*)

suit on April 20, 2011 to challenge the arbitrator's decision. (*1 CR 1-9*) In the meantime, the federal district court in which McEnery had challenged the arbitrator's decision following the 2009 exam rejected McEnery's challenges based on chapter 143 and the *Harrison* decision. (*5 RR 469-500 at Ds' X 2*) The federal district court signed a Final Judgment denying McEnery all relief on September 28, 2011. (*5 RR 501 at Ds' X 3*)

The underlying action remained pending; and, on September 19, 2014, the Union intervened by filing a Plea in Intervention. (*2 CR 626-28*) By the time the parties proceeded to a final determination on September 22, 2014, McEnery's live pleading was his Second Amended Petition, which had been filed on September 30, 2013. (*1 CR 34-45; 2 RR 4*) There, too, McEnery framed his attack on the arbitrator's decision in terms of chapter 143. (*1 CR 1-9, 34-45*) Following the introduction of exhibits, including the arbitration record, the trial court indicated that it would review the record from the arbitration, accept post-evidentiary briefing, and hear argument from counsel. (*3 RR 4-7, 60*) On October 6, 2014, McEnery filed his brief and, for the first time, raised the arguments he now makes on appeal. (*3 CR 1-31*) The City filed its brief, objecting to McEnery's argument – now premised on grounds that he never raised in his grievance, to the arbitrator, or in his pleadings in state court. (*3 CR 42-60*) The City also argued that McEnery's suit was barred by the federal court's prior judgment. (*3 CR 43-49*) In

response to those objections, McEnery sought leave to amend his pleading, which the trial court denied. (*3 CR 87-105; 4 RR 15*)

On November 18, 2014, the parties presented final argument to the trial court; and, on November 25, 2014, the trial court signed a Final Judgment in favor of the Defendants, confirming the underlying arbitration decision and awarding all costs of court against McEnery. (*3 CR 113; 4 RR 1-84*) On that same day, McEnery filed a Request for Findings of Fact and Conclusions of Law; and, on December 24, 2014, McEnery filed a Motion for New Trial. (*CR 114-16, 117-20*) McEnery filed his notice of appeal on February 23, 2015. (*CR 121-24*)

## SUMMARY OF THE ARGUMENT

It's 143 over and over again. I made specific provisions – Or specific references to specific provisions were made in the grievance on 143, for example, the sections that provide for all candidates being tested together in front of each other, all the candidates being asked identical questions, all of the candidates being able to view the grading of their paper and the grading of other papers, that all the questions need to be – to be written, there needs to be correct answers, things of that nature.

(*5 RR 40-41 at P's X 1*) McEnery's counsel made this statement when asked by the arbitrator to describe his grievance and set forth the issues for the arbitrator to resolve. Nowhere did McEnery allege his failure of the assessment center as some issue separate and apart from the procedural illegalities he claimed under chapter 143. Nowhere did McEnery allege that the lack of feedback violated the "Maintenance of Standards" provision in Article 9 of the CBA. Nowhere, even,

7

did McEnery allege that the lack of feedback violated section 143.001(a) and some vague notion of "transparency." In his district court challenge to the arbitrator's decision, McEnery clung to chapter 143 and the deviations of the assessment center process from that legislation. Not until his post-evidentiary brief did he assert the issues he now argues on appeal, to which the City objected. McEnery moved for leave to amend, which the trial court denied; and McEnery makes no complaint regarding that denial.

McEnery repeats those waived arguments on appeal. He attacks the arbitrator's denial of his grievance because, as he contends: (1) the denial of feedback was an "standard," "privilege," or "working condition" that the City had no authority to change; (2) the City could not abolish feedback without some express, written agreement to deviate from section 143.001(a)'s vague notion of transparency; and (3) he should have passed the tactical exam. In reviewing those complaints, the Court does not sit as the arbitrator; rather, it reviews the arbitrator's decision only for more than a scintilla of evidentiary support or some reasoned basis and for the arbitrator's exercise of bad faith. McEnery has made no such showing on appeal, even assuming he could assert the contentions he now makes.

McEnery never established that post-assessment feedback in addition to the assessors' notes and grading – which, when given, was done so at the behest of the independent contractor who prepared the exam – rose to the level of a "standard,"

8

"privilege," or "working condition" that could never be altered. He also never established that feedback had become a firmly entrenched past practice, and never demonstrated how feedback *after* the examination would have affected the assessment center results. He never requested feedback following his grievance.

As to the vestige of any argument based on chapter 143, McEnery's challenge likewise fails. McEnery points to nothing in section 143.001(a) that requires either "transparency" and fails to explain how any such requirement could be translated into a mandate for feedback – particularly in the context of an assessment center conducted wholly outside the confines of chapter 143. Chapter 174 permits a CBA to deviate from the requirements of chapter 143. Here, the CBA sets forth the assessment center as something different from the written exam governed by chapter 143, delegates to the City and the Union the exclusive authority to establish the parameters for that portion of the exam, and expressly preempts chapter 143 in the process. Regardless, McEnery's complaints in this respect are barred by res judicata and/or collateral estoppel. In a prior judgment, a federal district court rejected precisely these arguments as raised by McEnery himself in a suit against the City challenging an adverse arbitration award.

As for McEnery's failure of the tactical exam, more than scintilla of record evidence supports the denial of his grievance. The assessors' grading sheets and notes were entered into evidence – notes that showed concern for McEnery's

9

organization, eye contact, and willingness to respond to and contain an ongoing fire. McEnery never addressed those comments, opting instead to summarize his answers and then summarily claim that they were correct. Given the governing standard of review, the Court has no choice but to affirm.

But the Court need not even address these claims on their merits or resolve the issue of waiver. In his grievance and at arbitration, McEnery only ever requested an ability to retake the promotional exam and to be promoted to District Chief. Since the arbitration, both of those things have occurred. As a result, McEnery's appeal has been rendered moot and must be dismissed. And the Court need only address the issue of mootness assuming it overlooks the untimely filing of McEnery's notice of appeal. McEnery failed to file his notice of appeal within 30 days of judgment, opting to rely on his request for findings and conclusions and motion for new trial to extend the filing deadline. The issues presented to the trial court, though, were questions of law. A request for findings and conclusions was inappropriate and ineffective to extend appellate deadlines. Also, because the trial court sat as an appellate court reviewing the arbitrator's determination and not as a fact finder, a motion for new trial was likewise a nullity and could not extend the time to file an appeal. As a result, the Court should dismiss the appeal for lack of jurisdiction or, in the alternative, affirm the judgment below.

# ARGUMENT AND AUTHORITIES

**I.  The Arbitrator's Decision Is Supported by Substantial Evidence, and the Arbitrator Did Not Act Capriciously**

**A.  The Governing Standard of Review Permits the Court to Set Aside the Arbitrator's Decision Only if McEnery Produced a Firm Conviction in the Court's Mind that the Decision Lacks Any and All Support or that the Decision Resulted from Willful and Unreasoning Action**

Judicial review of an arbitration award adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). While the parties contracted for judicial review, they did so in extraordinarily narrow terms – permitting review only for "substantial evidence" (a well recognized standard under Texas law) and for capricious action by the arbitrator. (*5 RR 228 at Ps' X 3*)  To accord with the policy goals supporting the resolution of disputes by arbitration and the use of arbitration as an efficient alternative to litigation, as well as the terms of the parties' contract, the Court must give effect to this narrowly tailored review.

On appeal, the Court's standard of review for a district court judgment confirming an arbitration award is *de novo*. *See, e.g., Leshin v. Oliva*, No. 04-14-00657-CV, 2015 WL 4554333, *2 (Tex. App. – San Antonio, Jul. 29, 2015, no pet.) (mem. op.); *see also In re Edwards Aquifer Auth.*, 217 S.W.3d 581, 587 (Tex. App. – San Antonio 2006, orig. proceeding) ("Review under the substantial

11

evidence rule presents purely a legal issue"). That said, an appellate court does not engage in a *de novo* review of the arbitrator's decision; rather, it makes a *de novo* determination of whether the arbitrator's decision is supported by substantial evidence or was capricious. *Leshin*, 2015 WL 4554333, at *2. As even McEnery acknowledges, courts must give deference to the arbitrator's resolution of the issues before it. Review of an arbitrator's decision is very narrow, and courts must indulge presumptions in favor of the award. *See, e.g., Aspri Investments, LLC v. Afeef*, No. 04-10-00573-CV, 2011 WL 3849487, *3 (Tex. App. – San Antonio, Aug. 31, 2011, pet. dism'd) (mem. op.).

Under the parties' CBA, McEnery bears the burden to establish, "by clear and convincing evidence," that the arbitrator's decision was not supported by "substantial evidence" or that the decision was "capricious." (*5 RR 228 at Ps' X 3*) Though this standard references the need for "substantial evidence" in support of the arbitrator's decision, the evidence required to sustain the award is actually quite small. As the Supreme Court of Texas has held, "[s]ubstantial evidence requires only more than a mere scintilla, and 'the evidence on the record actually may preponderate against the decision . . . and nonetheless amount to substantial evidence.'" *Railroad Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792-93 (Tex. 1995); *see also Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128,

131 (Tex. 1999).[3] Here, again, the presumption is in favor of the arbitrator's determination. *See, e.g., City of El Paso v. Public Utility Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994) (decision and findings are presumed to be supported by substantial evidence, and burden is on contesting party to prove otherwise).

Under a substantial evidence standard of review, the trial court may not set aside the arbitrator's decision merely because it would have reached a different conclusion; rather, it may do so only if the decision was made without regard to the law or the facts and was therefore unreasonable, arbitrary, or capricious. *Spicer v. Texas Workforce Comm'n*, 430 S.W.3d 526, 533 (Tex. App. – Dallas 2014, no pet.); *see also Jamison & Harris v. National Loan Investors*, 939 S.W.2d 735, 737 (Tex. App. – Houston [14th Dist.] 1997, writ denied) (role of the trial court is not to substitute its judgment for that of the arbitrator). Thus, the issue for the reviewing court is not whether the arbitrator reached the correct conclusion but whether there is any reasonable basis in the record for its decision. *Railroad Comm'n of Tex.*, 912 S.W.2d at 792.

---

[3] McEnery argues that the "substantial evidence" standard as applied to review of agency determinations does not control review of an arbitrator's decision under the standard set forth in the CBA. That said, he acknowledges that it can "guide" the Court; and, in his next breath, asks that the Court "consider the substantial evidence standard of review" used in reviewing agency determinations. Regardless, undefined contractual terms are given their plain, generally accepted meaning. *See Epps v. Fowler*, 351 S.W.3d 862, 865-66 (Tex. 2011). When it comes to the use of the phrase "substantial evidence" and the term "capricious," those phrases have a generally accepted meaning, which should govern in this appeal. McEnery offers no alternative standard, and argued no alternative standard in the trial court below. (*3 CR 2-5*)

13

"A judgment rendered after honest consideration given to conflicting claims, no matter how erroneous, is not arbitrary or capricious." *Xtria L.L.C. v. International Ins. Alliance, Inc.*, 286 S.W.3d 583, 598 (Tex. App. – Texarkana 2009, pet. denied); *see also Aspri Investments*, 2011 WL 3849487 at *11 ("An arbitrator's decision is arbitrary and capricious if it is the product of 'willful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case.'"). Simply arguing that the arbitrator was wrong does not suffice. *See, e.g., Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 446 S.W.3d 58, 84-85 (Tex. App. – Houston [1st Dist.] 2014, pet. filed) (rejecting challenge to arbitrator's decision where nothing in the record suggested that the arbitrator's decision constituted bad faith or a failure to exercise honest judgment); *Hill Int'l, Inc. v. Riverside General Hosp., Inc.*, No. 01-14-00038-CV, 2014 WL 2433131, *3 (Tex. App. – Houston [1st Dist.], May 29, 2014, no pet.) (mem. op.) (appellant failed to explain how the arbitrator knew the law, recognized it required a particular result, but simply disregarded it).[4]

---

[4] Here again, McEnery acknowledges this as the appropriate standard of review but then cobbles together extraneous standards wholly inapplicable to the circumstances here. For example, he claims a court must set aside an arbitrator's decision any time the arbitrator fails to consider a relevant factor. But the case he cites was referencing an agency's failure to consider factors that the Texas Legislature mandated – completely irrelevant here. McEnery then veers off into inapplicable definitions of "arbitrary" action, which he never argued to the trial court and has, thus, waived. TEX. R. APP. P. 33.1(a)(1) (complaint must be made to the trial court in order to preserve it for appellate review). (*3 CR 1-5*) Finally, he never explains how the arbitrator acted arbitrarily, separate and apart from his reliance on the substantial-evidence standard.

14

The parties here even went a step further in restricting review of the arbitrator's decision by requiring the party challenging the decision to produce, in the mind of the reviewing court, a firm belief or conviction as to the truth of the allegations sought to be established. *See* Tex. Civ. Prac. & Rem. Code § 41.001(2) (defining "clear and convincing evidence"). In short, the governing standards require affirmance where McEnery has failed to produce in the Court's mind a firm conviction that the record lacks any and all support for the arbitrator's decision or that the arbitrator failed to exercise honest judgment in the resolution of conflicting claims but, instead, exercised bad faith. Because McEnery has failed to make any such showing, the Court should affirm the judgment below.

With respect to the legal issues presented – such as those concerning the Court's appellate jurisdiction, mootness, res judicata, and collateral estoppel – the standard of review is de novo. *See, e,g. In the Interest of M.A.B.*, No. 01-15-00388-CV, 2015 WL 6081937, *4 (Tex. App. – Houston [1st Dist.], Oct. 15, 2015, no pet.) (mem. op.) ("We consider de novo the legal question of whether we have jurisdiction over an appeal."); *Trulock v. City of Duncanville*, 277 S.W.3d 920, 923 (Tex. App. – Dallas 2009, no pet.) (mootness is a legal question reviewed de novo); *Berteen v. Hamdan*, No. 14-10-00247-CV, 2011 WL 3503322, *2 (Tex. App. – Houston [14th Dist.], Aug. 11, 2011, no pet.) (mem. op.) ("When an issue regarding application of res judicata presents purely legal issues, we apply a *de*

15

*novo* standard of review."); *Wise Elec. Coop., Inc. v. American Hat Co.*, \_\_\_ S.W.3d \_\_\_, 2015 WL 5460543, \*33 (Tex. App. – Fort Worth, Sep. 17, 2015, no pet. h.) (collateral estoppel presents question of law reviewed de novo).

> **B.  McEnery Only Ever Raised to the Arbitrator Whether Certain Procedural Elements of the Promotional Exam Violated Chapter 143 – Waiving Review of Any Other Issue**

On appeal, McEnery urges this Court to reverse the district court's judgment and vacate the arbitrator's decision on essentially two grounds.  First, he contends that the assessors' failure to give feedback violated Article 9 of the parties' Collective Bargaining Agreement, the so-called "Maintenance of Standards" provision, that it violated the "transparency" required by chapter 143 of the Texas Local Government Code, and that neither the CBA nor the guidelines adopted for the assessment center addressed feedback in a way that would render chapter 143 inapplicable.  Next, he contends that the assessors should not have failed him on the tactical exam, separate and apart from the exam's illegality under chapter 143 and the *Harrison* decision.  But these are all new complaints.  McEnery's challenge to the assessment center process – both in the written grievances he filed and in his framing of the issue for the arbitrator's determination – was quite narrow and did not include the challenges he now makes on appeal.

Specifically, McEnery challenged only certain procedural aspects of the assessment center portion of the promotional exam as having been conducted

contrary to chapter 143 of the Texas Local Government Code and contrary to the law set forth in *Harrison v. City of San Antonio*, 695 S.W.2d 271 (Tex. App. – San Antonio 1985, no writ). He began the grievance process under Article 32 of the parties' CBA on May 20, 2010, when he sent a handwritten complaint to grieve the "2010 District Fire Chief assessment center." (*5 RR 245 at P's X 4*) He alleged that the assessment center violated chapter 143 because it was an oral exam, because the candidates were not tested together, and because the candidates were not asked the same questions; and he also referenced *Harrison*. (*5 RR 245 at P's X 4*) He followed with a written letter that, too, referenced violations of chapter 143 and the *Harrison* decision based on the failure to administer and grade the assessment center in the presence of all candidates. (*5 RR 244 at P's X 4*)

McEnery followed those submissions with a grievance in memo form dated May 28, 2010. (*5 RR 235-42 at P's X 4*) There, he reiterated that the entire exam should have been in writing, that he was not tested in the presence of other eligible candidates, that he was given different questions from the other candidates, and that he was not permitted to be present during grading – and added that the questions were not taken from published source material. (*5 RR 235-36 at P's X 4*) He claimed that these deviations violated chapter 143 and *Harrison*. (*5 RR 235-36 at P's X 4*) Additionally, while he referenced his failure of the assessment center portion of the exam and the inability to substantiate his failure, that complaint, too,

17

rested on the violations of chapter 143 and *Harrison* that he alleged earlier in his grievance. (*5 RR 236-37 at P's X 4*) Specifically, McEnery referenced "improperly asked questions" that led to his failure and then explained that "[t]he failure to conduct the Center in strict accordance with the CBA and 143 and the *Harrison* case not only caused me to fail the Center but also prevented from [sic] fairly and completely being able to challenge the results." (*5 RR 237 at P's X 4*) He expressly limited any complaint regarding a lack of access to the following documentation: the assessment center test; grade sheets; correct answers;[5] source material for the questions; and the name of the publishing company that produced the source material. (*5 RR 236-45 at P's X 4*) He never mentioned feedback, never alleged any violation of the CBA's "Maintenance of Standards" provision, and never challenged his failure as an independent issue.

Once the parties proceeded to arbitration, McEnery confirmed that he never intended a lack of feedback (as a violation of the "Maintenance of Standards" provision or otherwise) or a failure of the exam (as some independent issue) to be part of the questions for the arbitrator to resolve. Rather, as his counsel stated at the beginning of arbitration, his grievance encompassed only the assertion that various specific procedural aspects of the assessment center process violated

---

[5] As Dr. Booth explained, there is no such thing as a "correct" answer in the context of the assessment center. (*5 RR 98-99, 101, 103 at P's X 1*)

chapter 143, specifically sections 143.032-034 of the Texas Local Government Code:[6]

> Our purpose today and our reason for our grie—our grievance is to pick apart the process of the assessment center to see if it did meet the requirements of 143, and if it did not meet the requirements of 143, if the Collective Bargaining Agreement specifically allowed for the variations from 143, and we believe it did not.

McEnery made no mention of feedback, no mention of Article 9, and no claim that the assessors wrongly failed him. (*5 RR 40 at P's X 1*) When asked at the outset of arbitration by the arbitrator to define the issue, McEnery's counsel explained:

> Because absent it being followed to the letter, it's in violation of 143. And absent . . . any specific changes to the Collective Bargaining Agreement in the proper fashion, it is still insufficient for 143. So that's why we're here today. We believe the entire process is – is faulty, is flawed. We believe the assessment center, as conducted, was flawed. We don't disagree that the City and the Union absolutely have the power and the authority to make some changes that probably would have rid us from being here today, but our position is, they didn't do that. They didn't do that, and that's why we are here today, is because of their failure to – to make necessary changes in accordance with the CBA that allows them to deviate from – from Section 143.

(*5 RR 40 at P's X 1*) When the arbitrator asked if the issue for his decision had been defined by McEnery more succinctly, McEnery's counsel explained:

---

[6] Section 143.032 generally requires that the candidates be given an identical, written examination in the presences of all other candidates and based on published source material. TEX. LOC. GOV'T CODE § 143.032. The relevant portion of section 143.033 requires the exam to be graded in front of the candidate. TEX. LOC. GOV'T CODE § 143.033(a). Finally, section 143.044 permits a candidate, upon request, to examine his promotional examination and answers, the grading, and the source material. TEX. LOC. GOV'T CODE § 143.034. McEnery never made any complaint that the written portion of the exam failed to comply with these requirements.

Well, I believe our – our grievances state that they pretty much deal with 143. It's 143 over and over again. I made specific provisions – Or specific references to specific provisions were made in the grievance on 143, for example, the sections that provide for all candidates being tested together in front of each other, all the candidates being asked identical questions, all of the candidates being able to view the grading of their paper and the grading of other papers, that all the questions need to be – to be written, there needs to be correct answers, things of that nature.

(*5 RR 40-41 at P's X 1*)  Again, counsel never raised the issue of feedback, a violation of Article 9, or the assessors' failure of McEnery. McEnery himself testified that his issue was with the way that the assessment center portion of the exam was given – that, in his mind, it violated chapter 143 and was illegal. (*5 RR 72 at P's X 1*)

McEnery did not latch onto the issue of "feedback" until Dr. Booth volunteered during his testimony on the second day of arbitration that the City decided not to give feedback to the candidates in connection with the 2010 exam. (*5 RR 109, 114 at P's X 1*)  But, even then, McEnery's discussion of the lack of feedback comprised at most a subset of the larger issue that the assessment center process failed to comply with chapter 143. (*5 RR 115 at P's X 1*)  In closing, when asked by the arbitrator to define the issue he was to decide, McEnery's counsel again reiterated that the arbitrator was to resolve whether the assessment center process violated chapter 143:

[I]t all ties into the same thing. We think it's another example of the City making up rules as they go or as they need rules to be made up

20

that are done in violation of Section 143. I respectfully disagree that this is a complicated issue. I really think it's a very simple issue.

(*5 RR 140 at P's X 1*)  He expounded:

> We do believe, though, that if you'll just – Primarily with the violation of the Collective Bargaining Agreement and the requirement of Section 143 Texas Local Government Code, we believe that the Local Government Code was enacted for a particular reason, and the word that we've used throughout this arbitration is "transparency."

(*5 RR 140-41 at P's X 1*)[7]  McEnery never framed any issue that the lack of feedback violated Article 9 or any substantive issue regarding his failure of the assessment center.

In his Second Amended Petition, McEnery focused exclusively on chapter 143 and the *Harrison* decision. (*1 CR 34-45*)  Repeatedly, McEnery confined the nature of the issue before the arbitrator as exceedingly narrow:

> At the arbitration the Plaintiff sought a declaration that the assessment center was given in violation of Chapters 143 and 174 of the Texas Local Government Code.
>
> *       *       *
>
> Plaintiff's grievance was based on the failure of the City of San Antonio to act properly in creating and administering its testing for the District Chief promotion process. Numerous improper acts were perpetrated by the City of San Antonio in violation of Chapters 143 and 174.

---

[7] Even that attempted expansion of his grievance – to encompass a lack of feedback as violation of chapter 143 – came too late, where it was never mentioned in any of his grievances. Article 32, section 8(c) of the CBA requires the grievant to "state in particular and with specifics the Fire Fighter's objection." (*5 RR 227 at P's X 3*)  By virtue of that same section of the CBA, the grievance forms the basis for the issues to be decided by arbitration. (*5 RR 227-29 at P's X 3*)

(*1 CR 38, 42*) Moreover, he specifically cited sections 143.032, 143.033, and 143.034 as the basis for his claims of noncompliance. (*1 CR 38, 40-41*) Here again, McEnery's requested relief demonstrates that he was not complaining about a failure of the exam as any stand-alone issue – requesting only that the exam be administered in accordance with the law. (*1 CR 44*) Nor did he complain about a lack of feedback as violative of the "Maintenance of Standards" provision or of some notion of transparency as contained in section 143.001. (*1 CR 34-45*) Even when the matter proceeded to final determination, McEnery explained the issues he raised to the arbitrator this way:

> Plaintiff grieved the fact that he failed and within that comes, well, what was the grading involved, what was the assessing involved, what was the evaluation, did that comply with the Local Government Code, did that comply with the CBA, and was there something, as part of that process, to allow plaintiff to grieve.

(*4 RR 49*) While he did reference feedback – the idea planted during Dr. Booth's testimony – he did so only in the context of arguing that the failure to provide feedback violated chapter 143 – specifically section 143.034. (*1 CR 41, 42-43*)

Late in the district court process, and now on appeal, however, McEnery made a wholesale change to the nature of his challenge. (*1 CR 34-45*; *3 CR 1-31*) No longer does he rest his complaint on chapter 143 or *Harrison* – though he peppers the end of his argument on feedback with references to that chapter and

22

case for good measure.[8]  Instead, his appellate complaint is that the arbitrator's decision is not supported by substantial evidence and was capricious because the lack of feedback deviated from past practice and, thus, violated Article 9 of the Collective Bargaining Agreement.  He also complains that the arbitrator's decision is both unsupported and capricious because no evidence supports his failure of the tactical exercise. The problem with these arguments is that they were never included as part of Appellant McEnery's grievance to be resolved by the arbitrator or otherwise framed as issues for the arbitrator to decide.

In order for the Court to conduct a review under the standard set forth in the CBA, McEnery must have focused the Court's attention on an issue that was presented to the arbitrator.  It makes little sense to ask the Court whether substantial evidence supports the arbitrator's decision or whether the arbitrator's ruling was capricious if attacks are being made as to issues the arbitrator was never asked to resolve.  The Court should reject the moving target that McEnery's complaint has become and should reject McEnery's attempt to attack the arbitrator's decision as to issues he never raised.

To reiterate, McEnery's grievance centered on ways in which the assessment center portion of the exam violated specific portions of chapter 143, *i.e.*, sections

---

[8] As will be discussed below, even that challenge is different.  McEnery now argues that the lack of feedback violated some general notion of "transparency" inherent in section 143.001 – as opposed to a specific provision requiring feedback post-examination – and that neither the CBA nor the guidelines adopted pursuant to the CBA adequately negated the duty to be transparent, *i.e.*, provide feedback.

23

143.032-143.034. (*5 RR 235-45 at P's X 4*) Nowhere did he grieve the absence of feedback from the assessors – either in the context of chapter 143 or as an independent issue for the arbitrator's decision. (*5 RR 235-45 at P's X 4*) While McEnery did grieve that he was unable to determine why he failed, he based that claim on the inability to access the assessment center test, grade sheets, correct answers, source material for the questions, and the name of the publishing company that produced the source material. (*5 RR 236-45 at P's X 4*) ("Because of all the issues *raised herein* I am unable to fully grieve . . .")

But even that complaint was urged in the context of section 143.034 – not some vague notion of transparency as contained in section 143.001. (*5 RR 236-37 at P's X 4*) Furthermore, nowhere in his grievance did McEnery reference an alleged failure to receive feedback as a violation of the City's past practice or of Article 9 of the parties' CBA. (*5 RR 235-45 at P's X 4*) Similarly, as noted above, though McEnery referenced his failure of the assessment center in the May 28, 2010 memo, he did so only in connection with chapter 143. (*5 RR 236-37 at P's X 4*) He never raised his failure as an issue independent of what he alleged were procedural irregularities with the assessment center portion of the examination. Even his request for relief focused on that fact – he only ever asked for a new exam given in compliance with what he viewed to be the law. (*5 RR 237 at P's X 4*)

It was not until his post-evidentiary brief that McEnery argued feedback and tactical exam issues as stand-alone points that the arbitrator should have addressed and on which McEnery should have succeeded. (*4 CR 1-31*) In response, the City objected on the grounds that these issues were never grieved, never presented to the arbitrator to determine – certainly, not outside the confines of any chapter 143 issue – and never pled in McEnery's appeal to the district court. (*4 RR 50-56*) Tellingly, McEnery sought to amend his complaint to expand his district court challenge, but the trial court denied his motion for leave; and McEnery makes no complaint on appeal regarding that denial. *See, e.g., Jacobs v. Satterwhite*, 65 S.W.3d 653, 655 (Tex. 2001) (per curiam) (error is waived when appellant fails to complain about trial court's ruling on appeal).

McEnery could not have raised issues of feedback or failure of the tactical exam for the first time in a post-evidentiary brief filed with the trial court. Section 8(B) of Article 32 in the parties' CBA requires any fire fighter challenging the assessment center process to file a grievance that states "in particular and with specifics" the nature of his objection. (*5 RR 227 at P's X 3*)[9] By failing to present

---

[9] As yet a further indication that McEnery never made any challenge based on the "Maintenance of Standards" portion of the CBA, a grievance as to Article 9 is governed by an entirely separate provision of the CBA. (*5 RR 216 at P's X 3*) McEnery's briefing establishes that he pursued his grievance pursuant to Article 32 – not pursuant to Article 30. Moreover, the governing provision under Article 30 requires any grievant basing a complaint on the "Maintenance of Standards" portion of the CBA to set forth the "specific standard" at issue, which McEnery wholly failed to do. (*5 RR 216 at P's X 3*) This is both demonstrative of McEnery's intent and his waiver.

25

any issue to the arbitrator that he now seeks to raise on appeal, McEnery has waived them for review. *See Omoruvi v. Grocers Supply Co.*, No. 14-09-00151-CV, 2010 WL 1992585, \*3 (Tex. App. – Houston [14th Dist.], May 20, 2010, no pet.) (mem. op.) ("Because there is no indication in the record that Omoruyi brought the issue before the arbitrator, Omoruyi cannot raise it in this appeal."); *Plaza at Turtle Creek Ltd. v. Henry Bldg., Inc.*, No. 08-00-00416-CV, 2002 WL 59603, \*3 (Tex. App. – El Paso, Jan. 17, 2002, no pet.) (not designated for publication) (holding that parties who failed to object to form of questions submitted to arbitration panel waived any complaints on review of arbitrator's decision).

Nor could McEnery raise those new challenges on appeal where he never pled for any such relief in the trial court below. Texas Rule of Civil Procedure 301 requires that the trial court's judgment "conform to the pleadings." *See also Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991) (per curiam). McEnery's live pleading – his Second Amended Petition – contained no such complaints, precluding the district court from basing any judgment on them. (*1 CR 34-45*) Again, the trial court denied McEnery's motion for leave to expand his complaints; and McEnery raises no issue regarding that denial to this Court. The trial court's judgment should be affirmed.

**C.** **Regardless, the Denial of McEnery's Grievance Is Supported by the Record and the Law**

**1.** **The Arbitrator's Decision Cannot Be Disturbed Based on a Lack of Feedback**

**a.** **Article 9 of the CBA Does Not Require that the Assessors Have Given McEnery Feedback – and Certainly Not Anything More Than He Obtained Through Their Notes**

Assuming that the Court were to overlook McEnery's unequivocal waiver of any issue pertaining to feedback as a violation of Article 9 of the parties' CBA, McEnery's argument still must fail. Appellant McEnery points to nothing in either chapter 143 or the CBA that sets forth any requirement that assessors who evaluate candidates as part of the assessment center give feedback. Instead, McEnery cobbles together a (waived) argument that Article 9 of the CBA, coupled with the City's past practice of providing feedback, precludes the City from foregoing feedback now. Ironically, McEnery discounted the notion of past practice during the arbitration itself. (*5 RR 132-33 at P's X 1*) Regardless, his belated attempt to embrace it fails on its merits.

In reviewing this point, the Court must keep in mind the governing standard of review. McEnery can prevail on this issue only if he establishes a firm conviction in the Court's mind that the arbitrator's denial of his grievance lacked any and all support or was premised on bad faith. The Court's job on appeal is not to decide how it would have ruled had it acted as the arbitrator; rather, it is to focus

27

on the narrowly-tailored review granted by the parties' CBA to decide if the arbitrator's decision should be anything other than upheld.

Article 9 provides that "[a]ll standards, privileges and working conditions enjoyed by the City of San Antonio Fire Fighters at the effective date of this Agreement, which are not included in this Agreement, shall remain unchanged for the duration of this Agreement." (*5 RR 171 at P's X 3*)  While McEnery asserts that post-assessment center feedback rose to the level of a "standard," "privilege," or "working condition," he offers nothing in support.  He cites to decisions that involved, for example, the method of filling a fire marshal position voluntarily; the purchase of unused sick leave; and inclement weather pay for such a characterization here. *See Orange Ass'n of Fire Fighters v. City of Orange*, No. 14-13-00061-CV, 2014 WL 891591, *4 (Tex. App. – Houston [14th Dist.], Mar. 6, 2014, no pet.) (mem. op.); *City of Laredo v. Mojica*, 399 S.W.3d 190, 196 (Tex. App. – San Antonio 2012, pet. denied); *Port Arthur Police Ass'n v. City of Port Arthur*, No. 09-09-00242-CV, 2010 WL 2173874, *3 (Tex. App. – Beaumont, May 27, 2010, no pet.) (mem. op.).  But none of those courts held that any of those actions rose to the level of a standard, privilege, or working condition.

But even if they had, McEnery cites to nothing that would raise something as trivial as feedback following the assessment center – in addition to the assessment center notes made by the assessors and given to McEnery (*5 RR 303-16*

28

*at P's X 10*) – to the level of a "standard," "privilege," or "working condition" that could never be changed. This is particularly so given that the feedback was not a portion of the examination itself and, thus, could never have affected any promotion decision. Furthermore, feedback was instituted at the behest of Dr. Booth, and not the City. (*5 RR 109, 114 at P's X 1*) Indeed, if feedback were to qualify as a "standard," "privilege," or "working condition," one could imagine, without much thought, a whole host of similarly trivial complaints that might qualify. Again, though, the governing standard of review calls for the Court to determine whether the denial of McEnery's grievance was a reasoned decision based on honest judgment – not whether the Court might decide the issue differently in the first instance. The arbitrator justifiably denied any grievance based on a lack of feedback beyond the assessors' notes.

Regardless, McEnery pointed to no conclusive evidence that feedback was, without exception, provided to candidates for promotion to District Chief at the time the applicable CBA was adopted – which is what the governing standard required that he do. While McEnery points to *some* evidence that this practice existed prior to the May 2010 assessment center, he nowhere conclusively establishes that it existed as past practice given without exception – only that it was given in 2009 and that Dr. Booth "believed" it had been given since he was

29

involved in creating the assessment center portion of the exam. (*5 RR 113-14, 116 at P's X 1*)

Thus, even assuming that the giving of feedback to candidates for promotion to District Chief following the assessment center portion of the examination constituted a standard, privilege, or working condition in the abstract, McEnery has failed to demonstrate that it existed as a firmly entrenched past practice to escape alteration under Article 9 or to permit the Court to do anything but affirm under the governing standard of review. Certainly, there was no established practice of giving helpful feedback, which is the gist of McEnery's newly formed complaint. This is particularly so in light of Dr. Booth's testimony that many assessors were uncomfortable with the feedback process and, on occasion, gave inaccurate information to candidates as a result. (*5 RR 116 at P's X 1*)

Ultimately, the argument regarding feedback is a red herring. The feedback, as referenced by McEnery through Dr. Booth's testimony, would consist of a "report that gives them comments from the assessors and their scores on individual performance dimensions." (*5 RR 115 at P's X 1*) This information necessarily would come after the test was concluded and, thus, could have no impact on McEnery's placement on the promotional exam. Such a challenge does not provide any evidence that the test itself was faulty or flawed. At best, post-test feedback could assist towards better performance on the next examination but

30

would not affect performance on a past examination. But McEnery failed to establish a nexus between a lack of feedback and any impact on *this* promotional exam. The arbitrator had more than sufficient basis for denying McEnery's grievance.

To the extent McEnery contends that the lack of feedback hindered his ability to grieve the examination, this (again, waived) argument fails. McEnery never requested any "feedback" prior to the time his grievance was filed and never offered any evidence that feedback was given in the past prior to the grievance filing deadline. (*5 RR 238-42 at P's X 4; 5 RR 317, 324 at P's X 11; 5 RR 435, 439 at P's X 21*) Rather, all that McEnery requested were the assessment center test, grade sheets, correct answers, source material for the questions, and the name of the publishing company that produced the source material. (*5 RR 236-45 at P's X 4*) But, as Dr. Booth explained, there is no such thing as a "correct" answer in the context of the assessment center. (*5 RR 98-99, 101, 103 at P's X 1*) There may be multiple correct and multiple incorrect answers and that an answer that might first appear to be a poor response is actually revealed to be a thoughtful answer after further questioning by the assessors. (*5 RR 98, 101 at P's X 1*) Regardless, McEnery had "feedback" in the form of the assessors' notes by the time of the arbitration and yet failed to frame any issue for the arbitrator regarding whether the lack of feedback prevented him from grieving his failure of the tactical exam. (*5*

31

*RR 303-16 at P's X 10*)  In fact, as noted above, he never asked the arbitrator to decide any substantive issue regarding his failure; and the arbitration record more than supports his failure, as discussed in detail below.  The trial court's judgment should be affirmed.

> **b.  The Arbitrator Correctly Determined that Chapter 143 Does Not Invalidate the Assessment Center**

To the extent there remains any vestige of any challenge to the arbitrator's decision based on chapter 143 and on *Harrison*, McEnery's complaint is far from clear.  He puts references to the CBA, "transparency" under chapter 143, and the *Harrison* decision into a blender and expects the Court to make a meal from it.  What McEnery appears to be arguing is this:  (1) section 143.001(a) carries with it some vague and undefined notion of "transparency" in the promotion process; (2) while chapter 174 gives the City and the Union the ability to deviate from chapter 143, the City and the Union had to expressly agree to limit the "transparency" otherwise required by chapter 143, *i.e.*, feedback; and/or (3) contrary to expressly agreeing to limit feedback, the City unilaterally decided to omit feedback following the assessment center, which is one step beyond the "secret agreement" eschewed in *Harrison*.  Those contentions lack all merit.

First, there is no requirement contained in chapter 143 for "transparency" generally or "feedback" specifically.  In fact, no variant of the word transparency or of feedback appears anywhere in the entirety of chapter 143.  Even McEnery

32

argues only that section 143.001(a) requires a *"kind of* transparency." (*Brief of Appellant at 25*) (emphasis added). In fact, section 143.001(a) simply describes the purpose of chapter 143 as being "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." TEX. LOC. GOV'T CODE § 143.001(a). McEnery has never argued – not even in an eleventh-hour plea to this Court – that personnel subject to political influence were promoted over him or that, absent feedback, corruption in the 2010 promotion process existed.

Regardless, no matter how tortured an interpretation McEnery gives section 143.001(a), there is no provision in chapter 143 that requires feedback. Sections 143.032, 143.033, and 143.034, which specifically concern the promotional exam itself, contain no requirements for either "transparency" or for "feedback." And, even assuming that chapter 143 carries with it a general desire for transparency, McEnery points to nothing indicating that this translates specifically to post-assessment center feedback or to any evidence that transparency was not accomplished without feedback – especially in connection with an exam procedure that is admittedly outside the confines of chapter 143.

Even if there were some general requirement of transparency or of feedback in chapter 143, those provisions are preempted by the parties' CBA, which makes provisions for and governs an assessment center process at odds with the

33

requirements contained in chapter 143. (*5 RR 225-27 at P's X 3*) Section 174.006 of the Texas Local Government Code acknowledges that provisions in a collective bargaining contract can prevail over requirements that might otherwise apply by virtue of chapter 143. TEX. LOC. GOV'T CODE § 174.006 ("[a] state or local civil service provision prevails over a collective bargaining contract under this chapter unless the collective bargaining contract specifically provides otherwise"). The parties' CBA divides promotional exams for the position of District Chief into two parts: a written examination that must comply with the provisions of chapter 143; and an assessment center that is outside the confined of that chapter. (*5 RR 225-27 at P's X 3*)

Thus, the City and Local 624 – as conceded by McEnery – have agreed by contract to include an assessment center as part of the promotion exam for the position of District Chief. The CBA further provides that all provisions in Article 32 of the CBA in connection with the assessment center expressly preempt and apply notwithstanding any contrary provision in Chapter 143. (*5 RR 227 at P's X 3*) Similarly, Article 37 provides that "in the event that any provisions of this Agreement conflicts or is inconsistent with any provision of Chapter 143 Local Government Code, this Agreement shall prevail, notwithstanding any such provision of the Civil Service Statutes." (*5 RR 233 at P's X 3*) Pursuant to state law, the provisions relating to the assessment center as contained in the CBA

prevail over the requirements of chapter 143 that apply to the written portion of the promotional exam.

Furthermore, the CBA expressly permits the Union and the City to agree on the guidelines to be presented to the Assessment Center Board for use in their examination. (*5 RR 226 at P's X 3*) The parties did just that when they set forth the relevant guidelines in a memorandum admitted into evidence at the arbitration, which directly addressed the exercises for the assessment center, the weight to be given each exercise, and the names of the assessors. (*5 RR 130, 138 at P's X 1; 5 RR 405 at P's X 16*) That the Union and the City did not agree to additional guidelines, in which they specifically addressed post-exam feedback, does not somehow negate the explicit intention to have the assessment center part of the exam conducted outside the confines of chapter 143. Nor did the City and the Union have to establish guidelines on all sorts of minutiae, lest the assessment center be governed by chapter 143.[10]

The whole point of delegating to the City and the Union the opportunity to address matters outside of the CBA is to take the specifics of the assessment center outside the confines of chapter 143. Moreover, the very nature of the assessment center necessarily conflicts with the "transparency" that might otherwise be present

---

[10] Even if it did apply, section 143.032 requires only that "the [promotional] examinations shall be held *substantially* as prescribed by this section." TEX. LOC. GOV'T CODE § 143.032.

35

in the context of a written examination governed by chapter 143 – meaning it does not govern here. So, for example, the kinds of testing that are part of the assessment center do not lend themselves to being conducted in the presence of other candidates or to being graded in the presence of the candidate in question. *See McEnery v. City of San Antonio*, No. 5:10-cv-001150-FB, slip op. at 29 (W.D. Tex., Sep. 28, 2011). (*5 RR 497 at D's X 2*) Similarly, that same nature precludes grading and the examination of one's answers in the same way following a written examination. Both the Union and the City – the parties to the CBA – agree. Not only did the Union, who entered into the CBA with the City on the fire fighters' behalf, intervene and urge confirmation of the arbitrator's decision, but the Union declined to represent McEnery in his grievance because it believed the assessment center process to be valid. (*5 RR 49-50, 136 at P's X 1*)

Still, McEnery persists in arguing that, because chapter 143 requires transparency (translated into feedback) and because neither the CBA nor the guidelines expressly address feedback, feedback was required. In support, he cites the decision in *Harrison v. City of San Antonio*, 695 S.W.2d 271 (Tex. App. – San Antonio 1985, no writ), arguing that the City's unilateral decision to forego feedback constituted the kind of "secret" agreement that *Harrison* forbids. The problem in *Harrison*, though, was not some secret agreement or unilateral decision wholly in conformity with the parties' CBA. Rather, *Harrison* dealt with a

decision by the police association to deviate from the express terms of the CBA without member consent, *i.e.*, to substitute a structured interview required by the CBA with an oral examination. *Id.* at 274-76. Here, the CBA contains no requirement for feedback following the assessment center; thus, there was no deviation from the CBA. (*5 RR 226-27 at P's X 3*) Furthermore, the CBA delegated to the Union and the City to establish the exclusive guidelines that would govern the assessment center process – which, again, contained no requirement for post-exam feedback.[11] (*5 RR 226 at P's X 3; 5 RR 405 at P's X 16*)

Moreover, *Harrison* does not require feedback absent an express provision in the parties' CBA – even assuming that chapter 143 mandates it. The CBA in *Harrison* was significantly different from the CBA in this case. In *Harrison*, the CBA did not contain an express provision delegating to the parties the exclusive right to set forth the guidelines that would govern the assessment center. 695 S.W.2d at 276, 277. Nor did the CBA contain a provision in the specific context of the assessment center *preempting* application of chapter 143. *Id.*; *see also Gomez v. City of Brownsville*, 976 S.W.2d 291, 293 (Tex. App. – Corpus Christi 1998, pet.

---

[11] McEnery makes a one-sentence allegation that the City violated this portion of the CBA because the City neglected to address feedback in the guidelines. He has waived the issue by his inadequate briefing. TEX. R. APP. P. 38.1(i); *see also ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) ("The Texas Rules of Appellate Procedure require adequate briefing."); *Neira v. Scully*, No. 04-14-00687-CV, 2015 WL 4478009, *1 (Tex. App. – San Antonio, Jul. 22, 2015, no pet.) (mem. op.) (holding inadequately briefed point waived). Regardless, nothing in section 4(B)(3) required the City and the Union to address post-assessment center feedback in their guidelines; thus, there was no breach of the CBA with respect to section 4(B)(3) of Article 32. (*5 RR 226 at P's X 3*)

37

denied) (distinguishing *Harrison* based on vague contractual language). The Court should affirm the judgment below.

> c. **Not Only Does Any Challenge Based on Chapter 143 Lack Merit, It Is Barred by Res Judicata and/or Collateral Estoppel**

A federal district judge has already addressed and rejected McEnery's same contentions in connection with a lawsuit filed by McEnery following the 2009 promotional exam. *5 RR 455-68 at Ds' X 1; 5 RR 469-500 at Ds' X 2; 5 RR 501 at Ds' X 3*) As part of that litigation, McEnery attacked the assessment center process under chapter 143 and *Harrison*. (*5 RR 455-68 at Ds' X 1; 5 RR 469-500 at Ds' X 2*) As such, his judicial challenge to the arbitrator's decision in this case is barred by res judicata and/or collateral estoppel.

Res judicata, or claim preclusion, requires a showing of the following: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Collateral estoppel, or issue preclusion, requires a showing that: (1) an issue decided in the first action was actually litigated; (2) that issue was essential to the prior judgment; (3) the issue is the same as raised in a pending suit; and (4) the doctrine is being asserted against a party or one in privity with a party in the prior litigation. *Texas Dep't of*

*Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001), *citing Eagle Properties,*

*Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990). Both doctrines are designed

to bring litigation to an end, prevent vexatious litigation, and maintain the stability

of court decisions by promoting judicial efficiency and preventing relitigation of

previously determined matters. *Texas Dep't of Public Safety v. Petta*, 44 S.W.3d

575, 579 (Tex. 2001); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 629 (Tex.

1992).

Though McEnery's complaint in the earlier federal action did not focus on

feedback *per se*, McEnery made the same argument that chapter 143 and *Harrison*

preclude the assessment center portion of the exam in any way that deviates from

the requirements of chapter 143, absent an express provision in the parties' CBA.

(*5 RR 486-87 at Ds' X 2*) Specifically, after failing to promote to the rank of

District Chief following the assessment center portion of the exam given on

February 19, 2009, McEnery filed suit in federal district court against the City of

San Antonio, Chief Hood, and others, in which he challenged the arbitrator's

decision that the assessment center was not subject to the provisions of chapter 143

– arguing that the award was arbitrary and capricious and unsupported in whole or

part by substantial evidence. (*5 RR 463 at Ds' X 1; 5 RR 471-72 at Ds' X 2*)

McEnery alleged that the parties' CBA required the City and the Union to agree on

guidelines for the Assessment Center Board and that the only guidelines proffered

39

were contained in a memorandum setting forth percentages for weighing answers. (*5 RR 472-73 at Ds' X 2*) As no other guidelines were propounded, he contended, the assessment center remained subject to the provisions of chapter 143, with which the City failed to comply. (*5 RR 473-74 at Ds' X 2* In response to motions for summary judgment, McEnery requested the federal district court to enter judgment independent of the motion based on *Harrison*. (*5 RR 486-87 at Ds' X 2*)

Judge Biery rejected McEnery's contentions regarding the assessment center process, finding that the parties' CBA controlled over the requirements of chapter 143 and finding *Harrison* distinguishable. *McEnery*, slip op. at 27-29. (*5 RR 495-97 at Ds' X 2*). Judge Biery further held that the nature of the exercises included as part of the assessment center – and on which the City and Union had agreed in the form of contractually permitted guidelines – conflicted with the requirements of chapter 143 that all participants be tested together, given identical questions, and be given only written examinations. *Id.* at 28. (*5 RR 496 at Ds' X 2*) Judge Biery noted that the parties' CBA expressly delegated to the Union and the City to formulate any and all guidelines for the assessment center and contained an express preemption of the provisions of chapter 143 as particularly applied to the assessment center itself. *Id.* at 28-29. (*5 RR 497-97 at Ds' X 2*) Judge Biery

entered final judgment based on his summary judgment order on September 28, 2011. (*5 RR 501 at Ds' X 3*)[12]

McEnery was both a party in that proceeding and a party in this proceeding. He asserted substantively indistinguishable arguments – that chapter 143 governs absent express provisions otherwise in the parties CBA or the guidelines adopted by the Union and the City as provided by *Harrison*. Judge Biery rejected those arguments – which were asserted by McEnery as an independent basis for judgment in this favor – on their merits. The requirements for application of res judicata and of collateral estoppel are met. *See City of San Antonio v. Cortes*, ___ S.W.3d ___, 2015 WL 1938695, **3-5 (Tex. App. – San Antonio, Apr. 29, 2015, pet. filed) (holding that fire fighter's attempt to avoid arbitration under the CBA was barred by collateral estoppel). The Court should affirm the judgment below.

### 2. The Assessor's Notes, Coupled with the Grading Sheets Constitute More Than a Scintilla of Evidence Supporting McEnery's Failure of the Tactical Exam

Next, to the extent McEnery raised any stand-alone issue that he should have passed the tactical exam, or even the assessment center as a whole, the record more than supports his failure. Though McEnery tries to lure the Court into a relitigation of the evidence presented to the arbitrator, this Court's role is much more

---

[12] Though McEnery does not appear to assert on appeal any of the points he actually included in his grievance or raised for decision by the arbitrator, Judge Biery's decision would similarly bar those points under the doctrines of claim and/or issue preclusion or, at the very least, constitute persuasive authority as to why they should not succeed.

constrained. Instead, and to reiterate, if there exists more than a scintilla of evidence to support the denial of McEnery's grievance, the Court must affirm the judgment below. Before turning to the substance of that issue, however, McEnery wholly ignores his inability to grieve or arbitrate the actual failure of the exam as a separate, independent issue. Specifically, section 4(B)(5) of Article 32 expressly provides that "[t]he result of the Assessment Center shall not be appealable to the Civil Service Commission or to arbitration through the grievance procedure." (*5 RR 226 at P's X 3*) The only provision permitting an appeal limits challenges to the "Assessment Center *process*." (*5 RR 227 at P's X 3*) (emphasis added)

Regardless, McEnery has failed to make the necessary showing on appeal. McEnery references, as "evidence" requiring a reversal, a summary of his answers to the tactical exercise questions and his personal opinion that those answers were correct. (*5 RR 72-77 at P's X 1*) But, as Dr. Booth explained, there is no such thing as a "correct" answer to the tactical exam. (*5 RR 98-99, 101, 103 at P's X 1*) There may be multiple correct and multiple incorrect answers, and an answer that might first appear to be a poor response can be revealed to be a thoughtful answer after further questioning by the assessors. (*5 RR 98, 101 at P's X 1*) The assessment center itself is a subjective exercise, intended to assess candidates on their knowledge of rules and regulations and on their presentation and demeanor in responding spontaneously to a set of circumstances. (*5 RR 96, 98-103 at P's X 1*)

Additionally, the assessors' notes indicate that the assessors had issues with McEnery's answers and presentation. (*5 RR 303-16 at P's X 10*) For example, one assessor noted that McEnery was "disorganized in presentation," while multiple assessors noted his limited and lopsided eye contact. (*5 RR 124 at P's X 1; 5 RR 310, 314, 316 at P's X 10*) A particularly useful example of the distance between McEnery's perceptions and those of the assessors concerns the issue of truss collapse. One of the reasons why McEnery thought he did well on the tactical exam was because he addressed an issue with potentially weak and collapsing trusses in front of an assessor from Houston, where fire fighters had died from not recognizing a similar problem. (*5 RR 73-73 at P's X 1*) But what McEnery thought was a resounding success actually gave the assessors pause and concern, with one of them writing: "Unwilling to address fire problem because risk of the roof. Will let the people come out. Failed to address the fire. Don't want anyone to act upon the rescue." (*5 RR 124-25 at P's X 1; 5 RR 313 at P's X 10*) Another assessor's notes also highlighted McEnery's failure to address containment and control of the fire. (*5 RR 316 at P's X 10*) Faced with those comments, McEnery still insisted that the assessment was positive. (*5 RR 125 at P's X 1*) Ultimately, though, McEnery agreed that the assessment was a matter of opinion. (*5 RR 125 at P's X 1*) In addition to their notes, and as further support for their decision, the

43

assessors agreed across the board that McEnery failed the tactical exam portion of the assessment center. (*5 RR 396-98 at P's X 12*)

Again, given the governing standard of review, the Court has no choice but to affirm. There was vastly more than a scintilla of evidence to support the denial of McEnery's grievance – even assuming it encompassed a failure of the exam itself as some independent issue. McEnery persists that the City bore the burden at arbitration to prove that he should have failed the exam, based on comments made by the City's counsel at that proceeding. Even a cursory review of those comments, though, reveals that counsel was positing a hypothetical scenario that did not apply because McEnery never grieved his failure of the exam as a separate, independent issue; and Appellees' counsel made clear elsewhere that the burden was McEnery's. (*5 RR 27, 42-43, 142 at P's X 1*) That said, regardless of whose burden it was below to convince the arbitrator, McEnery clearly bears the burden to demonstrate on appeal that less than a scintilla of evidence supports the denial of his grievance – which he has not done and cannot do. Indeed, that's the entire purpose of the CBA's restrictive standard of review. McEnery does not get to re-litigate his case to this Court.

The record contains proof to substantiate McEnery's failure – in the form of the assessors' notes and grading sheets. McEnery discounts the grade sheets as "conclusory" and, in the process, wholly miscites the Supreme Court's decision in

*Public Utility Comm'n of Tex. v. Gulf States Utilities Co.*, 809 S.W.2d 201, 211 (Tex. 1991). There, the Supreme Court was asked to address whether the agency in question acted reasonably in determining a utility's allocation of proceeds from the sale of assets. In the context of those distinct circumstances, the Court concluded that the question before the agency was a complicated one that had to have been based on more than conclusory testimony regarding ratepayers' contributions to depreciation of those assets. *Id.* There is nothing complicated about the issue of whether McEnery passed or failed an exam, and the assessors' subjective scores are *some* evidence of his failure – in and of themselves and certainly when combined with written comments showing the assessors' specific reservations regarding McEnery's responses.

Dr. Booth testified that there are no "correct" answers to the tactical exam, McEnery acknowledged that passage was a matter of opinion, and the assessors' notes and grade sheets demonstrate reservations regarding McEnery's answers. In response, McEnery offered nothing but his efforts to study for the exam, his opinion of what a "correct" answer to the test questions would have been, and his past experience – without ever challenging any of the specific reservations raised by the assessors. The trial court's judgment should be affirmed.

### 3. The Form of the Arbitrator's Decision Complied with the Parties' Collective Bargaining Agreement

McEnery's final complaint on appeal is that the arbitrator's decision is capricious because it is insufficiently specific.[13] Article 32, section 8, of the CBA requires only that the arbitrator "submit a written opinion on each grievance presented and/or heard by him without the benefit of the submission of briefs by the City, the Union, and/or the affected Fire Fighter." (*5 RR 228 at P's X 3*) The arbitrator's written opinion must be "brief and concise" and is required to recite only the grievant's name, the issue presented, and the arbitrator's decision. (*5 RR 228 at P's X 3*) The reasons for these limited requirements are clear – the arbitrator must produce his decision with 15 days after the close of evidence. (*5 RR 238 at P's X 3*) Arbitrator Leroy Bartman complied in all respects with the parties' CBA. (*5 RR 147-55 at P's X 2*)

Nevertheless, McEnery critiques the written decision because it fails to address, in specific detail, why McEnery failed the assessment center portion of the exam; because it omits any specific reference to feedback within the larger discussion of why the assessment center process did not violate chapter 143; because it did not recite exactly what the parties' CBA and chapter 143 require as to the grading process; and because it did not address particular evidence presented

---

[13] McEnery's discussion also devolves into yet another merits-based attack on the arbitrator's decision. Those have been addressed and dispatched above.

46

by McEnery during the arbitration. However, nothing in the parties' CBA required the arbitrator to recite everything he considered (though his decision was nine pages long), to discretely address sub-issues that are incorporated within the main issue determined, or recount any more expressly than he did the statutory, contractual, and evidentiary bases for his decision. More importantly, McEnery never argues that the arbitrator's decision somehow prevented him from making an appellate challenge; and that appellate challenge wholly fails on its merits.

To the extent McEnery is complaining that the arbitrator failed to resolve the issues he now asserts on appeal, here again McEnery has waived review. His live pleading to the district court only ever challenged the form of the decision in the following respects: that it "failed to mention any of the evidence presented by Plaintiff" and "did not explain why Plaintiff's evidence failed to substantiate Plaintiff's position." (*1 RR 38, 39, 42*) McEnery never pled that the arbitrator failed to address the issues he now asserts on appeal because he never raised those issues until his post-evidentiary brief. (*1 CR 34-45; 3 CR 1-31*) Regardless, the arbitrator can hardly be faulted for not addressing, any more explicitly, issues that McEnery never grieved and never framed as ones for the arbitrator to decide.

McEnery has waived review for yet other reasons. On the last page of his brief, McEnery couches this complaint in terms of a denial of "due process." McEnery nowhere raised a constitutional challenge to the district court's opinion in

47

the trial court below – even in his trial brief – and has waived review for all the reasons set forth above.  (*1 CR 34-45; 3 CR 1-31*)  And a couple of buried references to due process do not satisfy Rule 38.1(i)'s mandate to set forth "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  TEX. R. APP. P. 38.1(i); *see also ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) ("The Texas Rules of Appellate Procedure require adequate briefing.").  McEnery has waived any "due process claim" by inadequately briefing it.  *See Neira v. Scully*, No. 04-14-00687-CV, 2015 WL 4478009, *1 (Tex. App. – San Antonio, Jul. 22, 2015, no pet.) (mem. op.).  The Court should affirm the trial court's judgment below.

## II.    McEnery's Appeal Is Now Moot:  Since the Arbitration, McEnery Has Taken and Passed the Exam for Promotion to District Chief

Courts cannot decide a case that has become moot during the pendency of the litigation. *Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). "A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy, between the parties – that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Id.* "Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id.*; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding) ("A case becomes moot if a

48

controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal.").

The prohibition against deciding moot controversies stems from the separation of powers doctrine in the Texas and United States Constitutions, both of which prohibit advisory opinions. *National Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). Indeed, appellate courts lack subject-matter jurisdiction to decide moot controversies and render advisory opinions. *Id.*; *see also Harlow Land Co., Ltd. v. City of Melissa*, 314 S.W.3d 713, 716 (Tex. App. – Dallas 2010, no pet.) (courts lack subject matter jurisdiction over moot matter). As such, the issue cannot be waived and may be raised for the first time on appeal. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993); *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010) (whether court has subject-matter jurisdiction is a question of law reviewed de novo).

In his grievance, McEnery requested only the ability to retake the promotional exam. (*5 RR 235-45 at P's X 4*) During the arbitration, McEnery requested a promotion to district chief or that the 2010 promotional exam results be disregarded. (*5 RR 141-42 at P's X 1*) Since the arbitration, however, McEnery has both retaken the promotional exam and has been promoted to District Chief. (*1 CR 35*; *3 RR 35-38; Ex. 1 at 46*) Because McEnery has obtained all the relief he sought, his challenge to the arbitrator's decision is now moot. *See, e.g., In re Bush*,

49

No. 12-12-00326-CV, 2014 WL 668199, *11 (Tex. App. – Tyler, Feb. 19, 2014, orig. proceeding) (mem. op.) ("Because Judge Dickerson granted the relief requested by Relators, this mandamus proceeding is moot.").[14]  As a result, the Court should dismiss McEnery's appeal.

## III. McEnery Filed His Notice of Appeal Beyond the Deadline for Doing So, and Neither His Request for Findings and Conclusions nor His Motion for New Trial Extended the Time to Appeal

### A. A Notice of Appeal Generally Falls Due 30 Days After the Judgment Is Signed

Generally speaking, a notice of appeal is due to be filed within 30 days after the judgment is signed.  TEX. R. APP. P. 26.1.  Here, the Final Judgment was signed on November 25, 2014.  (*CR 113*)  As a result, the notice of appeal was due to be filed Monday, December 29, 2014.  *See* TEX. R. APP. P. 4.1(a) ("The last day of the period is included, but if that day is a Saturday, Sunday, or legal holiday, the period extends to the end of the next day that is not a Saturday, Sunday, or legal holiday.").  McEnery never requested any extension and did not file a notice of appeal until February 23, 2015.  (*CR 121-24*)

---

[14] While McEnery requested back pay in the trial court, he belatedly sought that relief only after arbitration and, thus, waived it.  *Omoruvi*, 2010 WL 1992585 at *3.  (*1 RR 44*)  Regardless, the absence of feedback in and of itself would never entitle McEnery to back pay – even assuming the claim had any merit.  And, as noted above, a fire fighter is not permitted to grieve or arbitrate the failure of the assessment center portion of the exam; and more than a scintilla of evidence supports McEnery's failure.

**B.** **A Request for Findings of Fact and Conclusions of Law Does Not Extend the Time to Appeal from a Trial Court's Review of an Arbitration Decision under a Substantial Evidence Standard**

McEnery relies on his request for findings and conclusions and on his motion for new trial to extend the time to perfect an appeal pursuant to Rule 26.1(a). In some instances, a timely motion for new trial or request for findings and conclusions extends the time to file an appeal to 90 days after the judgment is signed. TEX. R. APP. P. 26.1(a)(1), (4). But any reliance by McEnery on his post-judgment filings to extend the time to appeal in the context of this case would be wholly misplaced.

Though McEnery requested that the trial court issue findings and conclusions, his request was improper given the trial court's limited role in this proceeding, *i.e.*, to review the arbitration decision in an appellate capacity under the substantial evidence standard. *See* TEX. R. CIV. P. 296 ("In any case *tried in the district or county court without a jury*, any party may request the court to state in writing its findings of fact and conclusions of law.") (emphasis added). In reviewing an arbitration decision under that standard, a trial court makes no factual determinations; rather, it resolves a question of law in an appellate capacity. *See, e.g., Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) ("[W]hether there is substantial evidence to support an administrative decision is a question of law."); *In re Edwards Aquifer Auth.*, 217 S.W.3d 581, 587 (Tex. App.

– San Antonio 2006, orig. proceeding) ("Review under the substantial evidence rule presents purely a legal issue, and a trial of the fact issues by a judge or jury is avoided."); *Valentino v. City of Houston*, 674 S.W.2d 813, 820 (Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.) ("The very nature of review under the substantial evidence rule inherently precludes the necessity of filing findings of fact. Indeed, there are no 'facts' to be found by the trial court.").[15]

When a party files an inappropriate request for findings and conclusions, the request does not extend the time for perfecting an appeal. *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994) ("Because findings of fact and conclusions of law have no place in a summary judgment proceeding, the timetable was not extended."); *Madisonville Consol. Indep. Sch. Dist. v. Texas Employment Comm'n*, 821 S.W.2d 310, 314 (Tex. App. – Corpus Christi 1991, writ denied) ("[W]hether there is substantial evidence to support the Commission's decision is purely a question of law. . . . Therefore, even if requested, the trial court need not and should not file findings of fact and conclusions of law following the rendition of judgment in an administrative appeal.").

---

[15] Though Appellees raised claim and issue preclusion, those doctrines also presented legal issues. *See, e.g., Primo v. Great Am. Ins. Co.*, 455 S.W.3d 714, 728 (Tex. App. – Houston [14th Dist.] 2015, pet. filed) ("Whether collateral estoppel applies is a question of law for the court to decide."); *see also Texas State Bd. of Dental Examiners v. Brown*, 281 S.W.3d 692, 708 (Tex. App. – Corpus Christi 2009, pet. denied) ("when the parties do not dispute any factual determination upon which the res judicata bar is based, . . . and the only issue presented for review involves a purely legal determination, the proper standard of review is de novo").

Not only did McEnery's petition present a question of law to the trial court, but it did so in the trial court's capacity as an appellate tribunal. As a result, McEnery's request for findings and conclusions did not extend the time to take an appeal, leaving December 29, 2014 as the deadline for McEnery to have filed his notice. His notice of appeal, which was not filed until February 23, 2015, came too late; and this Court lacks jurisdiction. *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997) ("[O]nce the period for granting a motion for extension of time under Rule [26.3] has passed, a party can no longer invoke the appellate court's jurisdiction.").

**C. Similarly, a Motion for New Trial Cannot Extend the Time for Perfecting an Appeal When the Trial Court Acts in an Appellate Capacity**

Just as with the request for findings and conclusions, a motion for new trial is inappropriate and, indeed, a nullity following the trial court's ruling in what can only be seen as an appellate capacity, *i.e.*, in reviewing the arbitration award under the substantial evidence standard. The trial court had no obligation – and, indeed, no authority – to consider and grant a motion for new trial in this context. Rather, that function (along with the issuance of findings of fact and conclusions of law) is one performed by courts that try cases in the first instance. *See, e.g., D/FW Commercial Roofing Co., Inc. v. Mehra*, 854 S.W.2d 182, 189 (Tex. App. – Dallas 1993, no writ) (primary purpose of motion for new trial is to give trial judge

53

opportunity to cure any errors *by granting a new trial*); *Texas Dep't of Public Safety v. Shelberg*, No. 13-04-00100-CV, 2005 WL 1981488, *1 (Tex. App. – Corpus Christi, Aug. 18, 2005, no pet.) (mem. op.) ("the administrative law judge-not the trial court-is the fact finder in an administrative hearing"); *see also* TEX. R. CIV. P. 320, *et seq.* (referring to grant of new trial by court in which matter was heard initially).

This case was *tried* to an arbitrator, and suit was filed in district court to *review* the arbitrator's decision under the substantial evidence standard. *See, e.g.,* TEX. LOC. GOV'T CODE § 214.0012(f) (referencing district court's substantial evidence review of municipal order on substandard nature of structure as "appeal"). As a result, rules providing for the filing of a motion for new trial following a trial by the district court in the first instance do not apply and do not extend the time to perfect an appeal.

In an analogous circumstance, the Fort Worth Court of Appeals recognized the impropriety of filing a motion for new trial and the ineffectiveness of any such filing. Specifically, in *Swain v. State*, 319 S.W.3d 878, 878-79 (Tex. App. – Fort Worth 2010, no pet.) (per curiam), an individual who had appealed unsuccessfully his conviction by a municipal court of record to the county criminal court thereafter attempted to file a motion for new trial with the county court. The *Swain* court recognized that the county court was exercising appellate jurisdiction and

54

that the granting of a motion for new trial lies within the discretion of the court that tried the case in the first instance. *Id.* at 880 ("It is well established that the granting or denying of a motion for new trial lies within the discretion of the *trial court*.") (emphasis in original). As a result, the court held that the motion for new trial was a nullity and could not extend the time to perfect an appeal, requiring the court to dismiss the appeal for lack of jurisdiction. *Id.*; *see also Rogers v. State Board of Public Accountancy*, 310 S.W.3d 1, 4 n.4 (Tex. App. – Austin 2008, no pet.) (explaining that Rule 324(b) did not apply in context of judicial review of Board's order under substantial evidence standard).[16]

Thus, McEnery's motion for new trial likewise was a nullity and could not extend the timeline for perfecting an appeal. As a result, McEnery's notice of appeal was due thirty days after the trial court signed its final judgment. Because McEnery filed his attempted appeal too late, the Court lacks jurisdiction. The Court should dismiss this appeal.[17]

---

[16] Appellee acknowledges the Court's decision in *Texas Dep't of Pub. Safety v. Fecci*, 989 S.W.2d 135, 137-38 (Tex. App. – San Antonio 1999, pet. denied), in which the Court permitted a motion for rehearing to extend the time to take an appeal from the trial court's judgment upon review of an administrative ruling under the substantial evidence standard. Even assuming the correctness of that holding, here, however, McEnery filed only a motion for new trial. (*CR 117-20*) He did not file a motion for rehearing or a motion to modify, correct, or reform the judgment. (*CR 117-20*) Indeed, repeatedly throughout the motion for new trial, McEnery limited his requested relief to a "new trial." (*CR 117-20*) The district court could never have held a trial, old or new, because it was acting in an appellate capacity only. As a result, the motion for new trial could not extend the time to perfect an appeal.

[17] Appellees filed a Motion to Dismiss Appeal for Lack of Jurisdiction on April 27, 2015, which Justice Marion denied on May 4, 2015.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellees the City of San Antonio and Chief Charles N. Hood respectfully request that this Court dismiss Appellant Brian McEnery's appeal for lack of jurisdiction; or, in the alternative, that the Court affirm the judgment of the trial court. Appellees also request that the Court grant them such other and further relief to which they are entitled.

Respectfully submitted,

THE CITY OF SAN ANTONIO
Deborah Lynne Klein
State Bar No. 11556750
Office of the City Attorney
Litigation Division
111 Soledad Street, 10th Floor
San Antonio, Texas 78205
(210) 207-8784
(210) 207-4357 (telecopier)
deborah.klein@sanantonio.gov

THE LAW OFFICE OF
JACQUELINE M. STROH, P.C.
Jacqueline M. Stroh
State Bar No. 00791747
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 477-7416
(210) 477-7466 (telecopier)
jackie@strohappellate.com

FITZPATRICK & KOSANOVICH, P.C.
Mark Kosanovich
State Bar No. 00788754
P.O. Box 831121
San Antonio, Texas 78283-1121
(210) 207-7259
(210) 207-8997 (telecopier)
mark.kosanovich@sanantonio.gov

By: /s/ Jacqueline M. Stroh
Jacqueline M. Stroh

ATTORNEYS FOR APPELLEES

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

Pursuant to Texas Rule of Appellate Procedure 9.4(i), the undersigned certifies that this brief complies with the type-volume limitations and that, exclusive of the exempted portions, the brief contains 14,884 words and that the brief has been prepared in proportionally-spaced typeface using Times New Roman Font 14 in body text and Font 12 in footnotes.

/s/ Jacqueline M. Stroh
Jacqueline M. Stroh

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing Brief of Appellees was served on October 30, 2015 on the following counsel of record via the e-filing service provider:

Ronald B. Prince
Floyd Steven Contreras
Prince Contreras PLLC
417 San Pedro Avenue
San Antonio, Texas 78212
*Counsel for Appellant Brian McEnery*

Ricky J. Poole
Law Offices of Ricky J. Poole
The Forum Building
8000 IH-10 West, Suite 600
San Antonio, Texas 78230
*Counsel for Intervenor International Association of Fire Fighters, Local 624*

/s/ Jacqueline M. Stroh
Jacqueline M. Stroh